UNITED STATES of America, Plaintiff–Appellee,

v.

Tyrone WALKER, Walter Diaz, a/k/a Eric Rogers, and Anthony Walker, a/k/a Tony Walker, Defendants–Appellants.

Docket Nos. 96–1544, 96–1545, 96–1546.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1997.

Decided April 15, 1998.

**107**

Barry M. Fallick, Rochman, Platzer, Fallick, & Sternheim, New York City (Bobbi Sternheim, Rochman, Platzer, Fallick, & Sternheim) for Defendant–Appellant Tyrone Walker.

Carl J. Herman, Livingston, NJ, for Defendant–Appellant Walter Diaz.

Jeremy Gutman, New York City for Defendant–Appellant Anthony Walker.

Miroslav Lovric, Assistant United States Attorney for the Northern District of New York, Binghamton, NY (Thomas J. Maroney, United States Attorney for the Northern District of New York, Bernard Malone, Jr., Assistant United States Attorney) for Plaintiff–Appellee.

Before: MINER, PARKER, and WOOD, Jr.*, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

Defendants Tyrone Walker, Walter Diaz, and Anthony Walker appeal from judgments entered against them in the United States District Court for the Northern District of New York, (McAvoy, *C.J.*), following a jury trial, convicting them of multiple crimes arising from their participation in narcotics trafficking. Due to an error in calculation, Anthony Walker's sentence is vacated and remanded to the district court for further proceedings. Because we find the remainder of the appellants' contentions to be meritless, we affirm the decision of the district court in all other respects.

### Background

Tyrone Walker, Walter Diaz, and Anthony Walker were each indicted on all nine counts of an indictment. The indictment charged the appellants with: Count 1—conducting a criminal enterprise (21 U.S.C. §§ 848(a) and (c)); Count 2—commission of murder while engaged in a continuing criminal enterprise (21 U.S.C. § 848(e)(1)(A)); Count 3—commission of murder while engaged in a large narcotics conspiracy (21 U.S.C. § 841(b)(1)(A)); Count 4—conspiracy to distribute narcotics (21 U.S.C. § 841(a)(1)); Count 5—possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1)); Counts 6 and 7—using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)); and Counts 8 and 9—possession of a firearm by a convicted felon (18 U.S.C.

---

* The Honorable Harlington Wood, Jr., Senior Circuit Judge of the United States Court of Appeals

for the Seventh Circuit, sitting by designation.

§ 922(g)). After a lengthy jury trial, Tyrone Walker was found guilty on all counts. Walter Diaz was convicted on Counts 3, 4, 5, 7, and 9.[1] Anthony Walker was convicted on Counts 1, 3, 4, and 5. On appeal, the appellants raise numerous challenges to these convictions.

The evidence at trial concerned an alleged cocaine and crack distribution ring led by Tyrone Walker, Anthony Walker, and Diaz operating in upstate New York between 1989 and 1993. The government produced witnesses linking the three appellants to the murder of rival drug dealer Michael Monsour. The evidence was voluminous; in all, the government called more than ninety witnesses and presented more than two hundred exhibits. The trial record is copious and complex. Therefore, instead of addressing all of the evidence presented, we will address specific facts when they are relevant to our analysis.

### Analysis

#### A. Tyrone Walker's Motion to Proceed Pro Se

■ Under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), a criminal defendant has a Sixth Amendment right to self-representation. If the defendant asks to proceed *pro se* before the trial commences this right is absolute, and his request must be granted. *See United States v. Stevens*, 83 F.3d 60, 66 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 255, 136 L.Ed.2d 181 (1996). Once a trial has begun, the defendant's right to self-representation is "sharply curtailed." *Id.* at 67 (quotation marks and citation omitted). In cases in which the request is made following the commencement of the trial, the district judge must balance "the prejudice to the legitimate interests of the defendant" against the "potential disruption of proceedings already in progress." *Id.* (quotation marks and citation omitted). On appeal, considerable weight will be given to the district court's assessment of this balance. *See United States v. Brown*, 744 F.2d 905, 908 (2d Cir.1984).

On November 7, 1995, Tyrone Walker petitioned the court to allow him to proceed as co-counsel and informed the court that should his motion to act as co-counsel be denied he would then petition to proceed *pro se*. On November 8, 1995, when the court denied his motion to proceed as co-counsel, Walker moved to proceed *pro se*. On November 10, 1995, by written opinion, the court applied the standard applicable to requests made following the commencement of trial and denied Walker's request. The court also found that Walker's motion was motivated by an improper purpose to delay the proceedings.

Tyrone Walker contends that the district court erred in denying his application to proceed *pro se*. He asserts that his request was timely in that it was made before the jury was empaneled and sworn and before jeopardy had attached. Alternatively, Walker contends that any delay in alerting the court to his request was the fault of his attorneys and should not be attributed to him.

Tyrone Walker asserts that his application to proceed *pro se* was timely made. Walker concedes that the voir dire of jurors was virtually completed at the time he first indicated to the court any intention to proceed *pro se*. However, he contends that his request was not "made too late," since it was made before the jury was empaneled. It is unclear whether this assertion means that Walker believed his motion was made before the start of trial, or merely that it was made in time to avert any disruption of the proceedings.

If Walker believes that his motion was made before the start of trial, he is mistaken. In *Stevens*, this court clearly held that a motion made "just after the start of jury selection," *Stevens*, 83 F.3d at 66, was a motion "made after the start of trial." *Id.* at 67. In the present case, Walker made his motion after nineteen days of voir dire and just one day before opening arguments were scheduled to begin. Therefore, the district court was correct in treating Walker's motion

---

**1.** The Court dismissed Count 1 against Diaz upon the request of the government at the close of its case.

as one made after the commencement of proceedings and applied the correct standard in its analysis.

■ Walker's assertion could also be viewed as a claim that his motion was made in time to avert any disruption of the proceedings. This claim also fails. The district court found that if Walker's request to proceed *pro se* were granted, disruption of the proceedings would be "overwhelming and inevitable." First, the court noted that if it were to grant Walker's motion and allow him to proceed *pro se*, it would inevitably be forced to sever Walker's case from that of the two other defendants in order to ensure that they would not be prejudiced by Walker's lack of legal skills. Once a severance was granted, the court would then be forced to delay one of the proceedings for several months until the conclusion of the first trial. We agree with this analysis.

Possible disruption must be weighed against the potential for prejudice to Walker if his motion were denied. Walker admits that he was satisfied with his attorneys. His only sound reason for wanting to represent himself was that he wanted the chance to show the jury that he was a human being and not a savage. This is not sufficient to outweigh the disruption that would result if Walker were allowed to represent himself. Further, based on Walker's response to questioning on his motion, the district court concluded that his motive was securing delay and obstructing the orderly course of the administration of justice. Therefore, Walker's reasons for self-representation were not only insufficient, they were improper. The district court judge acted within his discretion in denying Walker's motion.

■ Finally, Walker argues that if his motion for self-representation was untimely, it was because his attorneys failed to alert the court as to his desire to proceed *pro se*. However, on November 7, 1995, when Tyrone Walker addressed the court regarding this point, he stated that he was going to make a motion to proceed *pro se* only if the court denied his request to act as co-counsel. Additionally, Walker's co-defendants raised representation issues with the court in Walker's presence prior to the commencement of pro-

ceedings. The fact that Walker passed up numerous opportunities to alert the court personally to his desire to proceed *pro se* severely undercuts his argument. Walker is responsible for the fact that his motion to proceed *pro se* was untimely; the delay cannot be attributed to his attorneys.

### B. Tyrone Walker's Claim Regarding the Monsour Murder

■ Tyrone Walker appeals the district court's refusal to allow him to admit into evidence during his case-in-chief an alleged admission made by the government during voir dire. In a dispute regarding an allegedly over-simplified scenario that the defense was proposing to prospective jurors, one of the prosecutors stated to the court during a bench conference:

> Now, I know that we can't try the case in front of each one of these potential jurors, but the charge in this case is, of course, the Monsour murder, and the Court knows a lot about what the Government intends to prove. But I would represent to the Court again that in this case, the evidence the Government will offer is that all three of these defendants planned the robbery of Michael Monsour, believing that he had drugs and/or money. We don't know if they went there with the intention of killing him or not. We know that they went armed, we know that one of the guns was operable, we know that the other was not. And for purposes of robbery, it usually doesn't matter whether a gun works or even is real, as this Court probably knows. Just displaying the gun to an intended victim is usually sufficient to cause that victim to comply. In this case, it did not.

During the presentation of his case-in-chief, Walker requested permission to offer this statement into evidence as an admission by a party-opponent under Fed.R.Evid. 801(d)(1) to show that on October 30, 1995, the prosecution was unable to determine whether the defendants intended to carry out a robbery or to kill. The district court properly denied this request.

As a preliminary matter, Walker may have waived this issue. In the trial court and on

appeal, Walker asserts that the statement is admissible under Fed.R.Evid. 801(d)(1). Rule 801(d)(1) applies to prior statements of a witness being cross-examined after testifying at trial. It provides no basis for the admission of a prosecutor's statements to the court during voir dire. Since Walker asserts that the statement is an admission by a party-opponent, the proper argument for admissibility would be under Rule 801(d)(2). This argument was never clearly presented in the district court, and, therefore, Walker may not raise it on appeal.

Even if Walker's claim is not waived, the result is the same, since it fails on the merits. The district court has broad discretion regarding the admissibility of evidence. Its rulings will be disturbed only for an abuse of that discretion. *See United States v. Wong,* 40 F.3d 1347, 1378 (2d Cir. 1994). In order for a statement to be an admission under Fed.R.Evid. 801(d)(2), it must be an "assertion." Fed.R.Evid. 801(a). In the present case, the prosecutor was not asserting that he did not believe that the defendants had the requisite intent, he was stating that intent was not conceded. It was the government's intention to put on evidence of intent, but it was up to the jury to evaluate this evidence and to reach a conclusion on intent. Given the ambiguity of the statement and the context in which it was made, the district court did not abuse its discretion in holding that the prosecutor's statement did not constitute a concession regarding the government's ability to prove intent.

### C. *Walter Diaz's Motion for Severance*

Diaz argues that the district court erred in denying his motions [2] for severance. He claims that he was prejudiced by the outrageous conduct and testimony of Tyrone Walker and by the introduction of prejudicial information which allegedly would not have been admissible in a severed trial.

Fed.R.Crim.P. 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Clearly, joinder was proper under Rule 8 in the present case. When defendants are properly joined under Rule 8, a severance, pursuant to Fed R.Crim. P. 14, should only be granted if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. *See Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). A defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials. *See United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir.1984). The district court's finding that Diaz failed to meet this heavy burden was reasonable.

Rule 14 does not require severance, even if prejudice is shown. *See Zafiro,* 506 U.S. at 538–39, 113 S.Ct. at 937–38. The rule leaves the type of relief granted to the sound discretion of the trial court. *See id.* In the present case, the district court gave the jury limiting instructions. As the Supreme Court has recognized, limiting instructions are often sufficient to cure any risk of prejudice. *See id.* at 539, 113 S.Ct. at 938. The court's careful and proper limiting instructions were clearly sufficient to cure any risk of prejudice in the present case. Additionally, Diaz has failed to demonstrate that he was so severely prejudiced by the joinder that he was denied a fair trial. The district court did not abuse its discretion in denying Diaz's motions for severance.

### D. *Walter Diaz's Motion to Dismiss Counts 3, 4, 5, and 7 pursuant to United States v. Lopez*

Walter Diaz argues that Counts 3, 4, 5, and 7 of the indictment should be dismissed. He asserts that, under *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Congress exceeded

---

**2.** Diaz made two motions for severance, one pretrial and one during the testimony of Tyrone Walker.

its constitutional power in enacting the statutes upon which these counts are based. The district court examined these statutes in light of Congress' historical power under the Commerce Clause and the Supreme Court's decision in *Lopez* and determined that the statutes were valid. We agree with the district court's reasoning and affirm.

Diaz urges this Court to extend the ruling in *Lopez* to invalidate 18 U.S.C. § 924(c)(1) and 21 U.S.C. §§ 841(a)(1), 846, and 848(e)(1)(A). This Circuit has already rejected a post-*Lopez* challenge to the constitutionality of 21 U.S.C. § 846. *See United States v. Genao,* 79 F.3d 1333, 1336–37 (2d Cir. 1996). Accordingly we reject Diaz's challenge to 21 U.S.C. § 846. Additionally, 21 U.S.C. § 841(a)(1) and § 848(e)(1)(A), like § 846, are part of the Controlled Substances Act. In enacting this legislation, Congress made specific findings and declarations codified at 21 U.S.C. § 801. These declarations provide a specific, reasonable finding by Congress that local narcotics activity substantially affects interstate commerce. *Genao,* 79 F.3d at 1337. Additionally, the Controlled Substances Act concerns an obviously economic activity, drug trafficking. *See id.* Therefore, Congress was within its power under the Commerce Clause in enacting 21 U.S.C. § 841(a)(1) and § 848(e)(1)(A), and the present case is distinguishable from *Lopez.*

 Similarly, 18 U.S.C. § 924(c)(1) deals with crimes of violence and drug trafficking. Section 924(c)(1) makes it unlawful to use or carry a gun during or in relation to "any crime of violence or drug trafficking crime." We agree with the district court in finding that although not directly expressed under Title 18, the legislative declarations in Title 21 are applicable to crimes of violence and drug trafficking on the whole. *See, e.g., United States v. Bell,* 90 F.3d 318, 320 (8th Cir.1996). Once again, we find that § 924(c)(1) regulates an economic activity that substantially affects interstate commerce and, as such, is a valid exercise of Congressional power under the Commerce Clause. Diaz's attempts to invalidate these statutes on Constitutional grounds fails.

### E. Charge to the Jury

 Anthony Walker contends that the Court's *Pinkerton* charge permitted the jury to convict him of murder without finding that the killing was foreseeable as an act in furtherance of the original narcotics conspiracy. Since Walker's counsel did not object to the charge at trial on the ground raised on appeal, we review for plain error. *See, e.g., United States v. Maniktala,* 934 F.2d 25, 29–30 (2d Cir.1991). When conducting our review of a district court's jury charge, we do not consider the challenged portions in isolation, but in light of the instructions as a whole. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 963 (2d Cir.1990).

 We have held that under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a conspirator can be held liable for the substantive crimes committed by his co-conspirators to the extent that these actions are readily foreseeable consequences of conduct furthering the unlawful agreement. *See United States v. Romero,* 897 F.2d 47, 51 (2d Cir.1990). The district court presented the jury with a *Pinkerton* charge as an alternative method for evaluating the possible guilt of Anthony Walker with regard to the Monsour murder. As the third element of this charge, the court instructed the jury that it must find that the murder was committed "pursuant to the common plan and understanding you found to exist among the conspirators." Anthony Walker contends that this portion of the jury charge was flawed because it did not specify that the only "common plan or understanding" that could satisfy this requirement would be the original narcotics conspiracy. However, Anthony Walker ignores the fact that the district court introduced the *Pinkerton* elements by stating that

[i]f, ... you find, beyond a reasonable doubt, that Tony Walker was a member of, and thus guilty of the conspiracy charged in Count Four ..., namely the conspiracy to distribute and possess with intent to distribute cocaine, then you may also, but you are not required to, find Tony Walker guilty of the [Monsour murder], provided you find each of the following elements beyond a reasonable doubt.

Clearly, element three of the *Pinkerton* charge, when viewed together with the immediately preceding paragraph, instructs the jury to consider whether the murder was a foreseeable consequence of conduct undertaken in furtherance of the original conspiracy to distribute narcotics. Walker's claim fails.

### F. Sufficiency of Evidence

All three appellants, in raising sufficiency of the evidence claims, bear a heavy burden. This court must view the evidence in the light most favorable to the government and draw all inferences in the government's favor. *See United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994). While viewing the evidence as required, we must affirm the conviction as long as " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We review each of the appellants' claims separately.

#### i. Evidence that a single conspiracy existed

 Both Tyrone Walker and Diaz contend that the evidence was insufficient to support the finding of a single conspiracy. The essence of conspiracy is agreement, and in order to prove a single conspiracy existed, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *Maldonado–Rivera,* 922 F.2d at 963.

 Tyrone Walker argues that the "significant lapses of time between alleged activities" demonstrated separate conspiracies. However, lapses in time do not necessarily convert a single conspiracy into multiple conspiracies. *See id.* Diaz argues that multiple conspiracies, rather than a single one, existed since, in addition to the time lapses, the evidence showed activity by "different personnel at different locations." Changes in membership and shifts in locale of operation also do not necessarily convert a single conspiracy into multiple ones. *See id.*

The trial evidence clearly showed an ongoing conspiracy with the goal of distributing drugs. The fact that the conspiracy began by distributing powder cocaine and then later changed to crack cocaine does not alter this conclusion. Additionally, despite brief periods of incarceration, the evidence was such that a reasonable jury could find that Diaz and Tyrone and Anthony Walker continually maintained a conspiratorial relationship during the time period in question. Specifically, the trial testimony of Kenneth Richardson and Lisa Nixon describing the defendants' drug trafficking activities beginning in 1988 and continuing through 1993 provides a sufficient basis such that a reasonable jury could conclude beyond a reasonable doubt that a single conspiracy existed from January, 1989 to September, 1993.

#### ii. Evidence that the murder of Michael Monsour was committed in furtherance of a criminal enterprise

 Tyrone Walker contends that the evidence was insufficient to support the finding that the Monsour murder was committed in furtherance of a criminal enterprise in violation of 21 U.S.C. § 848(e)(1)(A). To establish liability, the government must show that the murder was committed by a "person engaging in or working in furtherance of a continuing criminal enterprise" or "engaging in" a drug offense proscribed by 21 U.S.C. §§ 841(b)(1)(A) or 960(b)(1). 21 U.S.C. § 848(e)(1)(A). Tyrone Walker asserts that the evidence was insufficient to show that the Monsour murder was related to any continuing criminal enterprise or drug conspiracy. However, Josh Pettway testified that Tyrone Walker had said that he was going to kill Monsour in order to get Monsour's money. Additionally, Pettway testified that the Monsour incident was planned after the defendants were informed that Monsour was in town with money and drugs and that the situation was discussed in a manner consistent with other robberies designed to obtain drugs and money. When viewed in the light most favorable to the government, the record contains sufficient evidence such that a rational jury could have found that the purpose of the murder was to obtain drugs and money to be used in furtherance of the continu-

ing criminal enterprise. Walker's contention is without merit.

### iii. Evidence that appellant Diaz either intentionally killed or counseled, commanded, induced, procured, or caused the intentional killing of Michael Monsour

 Diaz alleges that the evidence is insufficient to support his conviction on Count 3 for the commission of intentional murder while engaging in a major drug conspiracy in violation of 21 U.S.C. § 848(e)(1)(A). In finding Diaz guilty under the statute, the jury had to find that four elements were present. It had to find that (1) Diaz was guilty of the narcotics conspiracy as charged in Count 4; (2) the drug conspiracy involved at least five kilograms of powder cocaine or fifty grams of crack cocaine, see 21 U.S.C. § 841(b)(1)(A); (3) while engaging in the drug conspiracy involving the specified quantity of drugs, Diaz either intentionally killed or counseled, demanded, induced, procured, or caused the intentional killing of Michael Monsour; and (4) that the killing of Monsour actually resulted from Diaz' actions. Diaz challenges the sufficiency of the evidence only with respect to the third element.

At trial, Josh Pettway testified that from the very beginning of their discussions concerning Monsour, it was clear that Tyrone Walker intended to kill Monsour and take money from him. Additionally, Tyrone Walker and Diaz engaged in target practice in preparation for the Monsour confrontation. While Diaz attempts to characterize the Monsour incident as "an armed robbery which suddenly, without warning, was transformed into a fatal shooting," there is sufficient evidence to support a jury finding to the contrary.

 To the extent that Diaz argues that, as a matter of law, he cannot be held liable for a violation of § 848(e) as an aider or abettor, we reject his argument. While this Circuit has .held that aiding and abetting liability is inapplicable to violations of § 848(a) and (c), see United States v. Bene-

vento, 836 F.2d 60, 71–72 (2d Cir.1987); United States v. Amen, 831 F.2d 373, 381–82 (2d Cir.1987), it has not yet specifically addressed violations under § 848(e), which was added in 1988. Since we find that § 848(e) is broader in scope than §§ 848(a) and (c), we hold that aider and abettor liability is available for violations under subsection (e).

Section 848(e)(1)(A) provides enhanced sentencing for:

> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) ... who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, ....

21 U.S.C. § 848(e)(1)(A). Walter Diaz was convicted for murder on Count 3 under the second prong of § 848(e)(1)(A) as a "person engaging in an offense punishable under section 841(b)(1)(A)." This prong mirrors the other sections of § 848 in requiring that the defendant be "engaging in" a large narcotics conspiracy at the time of the murder.[3] However, unlike the other sections of § 848, § 848(e)(1)(A) expressly includes language of aiding and abetting liability which applies to all prongs under the section. See 21 U.S.C. § 848(e)(1)(A) ("any person ... who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual"); see also 18 U.S.C. § 2. Additionally, § 848(m) provides mitigating factors applicable only to § 848(e). One of the factors to be considered is the fact that "the defendant is punishable as a principal in the offense which was committed by another, but the defendant's participation was relatively minor." Therefore, by the plain language of the statute, § 848(e)(1)(A) demonstrates clear intent to include liability for aiding and abetting. The district court was correct in instructing the jury that aiding and abetting liability was available under Count 3, and in fact, Diaz did not specifically challenge this jury instruction on appeal.

---

**3.** This is in contrast to the first prong of § 848(e)(1)(A) which extends the liability to per-

sons '"engaging in or working in furtherance of" a continuing criminal enterprise.

The evidence, viewed in the light most favorable to the government, supports a finding that Diaz knew that Monsour would be killed in the confrontation, that he aided in preparations for the murder, and that he accompanied Tyrone Walker to Monsour's house with the shared intent of carrying out the killing. Diaz's claim of insufficient evidence fails.

### iv. Anthony Walker's claims regarding the Monsour murder conviction

Anthony Walker asserts that the evidence was insufficient to support his conviction for the Monsour murder either under the *Pinkerton* doctrine or under an aiding and abetting theory. Under *Pinkerton,* a conspirator can be held liable for the substantive crimes committed by his co-conspirators if the government proves that these actions were readily foreseeable consequences of conduct furthering the unlawful agreement. *See Romero,* 897 F.2d at 51. The goal of the underlying conspiracy was to possess and distribute narcotics. The evidence, when viewed in the light most favorable to the government, shows that the Monsour murder was committed in an attempt to get money and drugs in furtherance of this goal. While Anthony Walker argues that murder was not a foreseeable consequence of the conspiracy, he fails to note that the evidence shows that he was in fact aware of Tyrone's intention to murder Monsour during the robbery. Anthony Walker attempts to distinguish the robbery, a foreseeable event in furtherance of the conspiracy, from the murder, which he claims was an act of personal vengeance contrary to the interests of the conspiracy. However, this Court must draw all inferences in the government's favor, and in so doing, it is not unreasonable to conclude that the murder/robbery of a rival drug dealer would further the conspiratorial purpose by strengthening the aggressor's position in the local drug trade.

Additionally, the evidence is sufficient to show that Anthony Walker aided and abetted the Monsour murder. *See generally* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids or abets, counsels, commands, induces or pro-

cures its commission is punishable as a principal.") The evidence shows that Anthony Walker was a part of the planning and preparation for the Monsour confrontation, with the knowledge that Tyrone was planning on killing Monsour during the robbery. Anthony Walker was originally supposed to go with Diaz and Tyrone Walker to Monsour's house to assist in the robbery/murder. Later, Anthony decided that it would be wiser if he and Pettway went to a local bar at the time of the murder in an attempt to create an alibi for Tyrone and Diaz. When considering all of this evidence in the light most favorable to the government, there is sufficient evidence to hold Anthony Walker liable for aiding and abetting in the murder of Michael Monsour under the statute.

### v. Anthony Walker's continuing criminal enterprise claim

Anthony Walker contests his conviction for engaging in a continuing criminal enterprise under 21 U.S.C. § 848(c). A conviction under § 848(c)(2) requires proof that a defendant committed a series of violations of federal narcotics laws

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c)(2).

Anthony Walker claims that the evidence is insufficient to support the findings that he acted in a management or supervisory position with respect to Toni Lopez and Rosa Rivera. Walker first argues that he did not receive "substantial income or resources" from Lopez or Rivera. As Walker notes in his reply brief, the income or resources requirement under prong (B) applies to the offenses. Therefore, in order for liability to attach, Walker must derive substantial income or resources from the narcotics violations as a whole and not from each subordinate individually. While Walker asserts that it is implicit in the statute that the supervisees be engaged in offenses contributing to that income, he offers no reasons to

support this assertion. Walker also attempts to cast an ambiguity over the statute, by claiming that it is at least ambiguous as to whether the supervisees must contribute to the supervisor's income from the violations. Under the plain language of the statute, the government must show that Anthony Walker derived income or resources from narcotics violations which he undertook in concert with at least five other persons with respect to whom he occupied a managerial role. No ambiguity exists. Therefore, we must determine whether the evidence was sufficient to support a finding that Anthony Walker occupied a managerial role with respect to Rivera and Lopez.

The record testimony of Rivera, Lopez, Pettway, Bambi Littlefield, and Dana Rodriguez shows that Anthony Walker was a frequent presence in the cocaine distribution houses and that he took cocaine and money from the sites at will. With respect to Rosa Rivera, the record shows that Anthony Walker brought Rivera cocaine on several occasions for her to sell and returned to pick up the money that she received from these sales. Given the other evidence and considering the evidence in the light most favorable to the government, this is sufficient to support a finding that Anthony Walker occupied a supervisory position over Rivera. When viewed in conjunction with the other evidence and in the light most favorable to the government, Lopez's testimony concerning the incident in which Anthony brought drugs to her for her to distribute also is sufficient to support a jury finding that Anthony Walker had begun to exercise a supervisory role over her actions.

### G. Anthony Walker's Sentencing Claims

██ Anthony Walker contends that the district court erred in applying a criminal history level of V in his sentencing and in failing to credit him with time already served under his state sentence. Since Walker failed to raise these arguments in the district court, we review for plain error. *See United States v. Patasnik*, 89 F.3d 63, 74 (2d Cir. 1996).

██ Walker argues that all but one of his criminal history points were for sentences for conduct that was part of the present conspiracy offense and, as such, should not be included as "prior sentences" under § 4A1.2 of the Sentencing Guidelines. Walker contends that his correct criminal history level is I. The government concedes that the district court erred in assigning a criminal history level of V, but does not specify what it believes to be the correct level. The government argues that this error is immaterial since at level 43, the defendant's original level, the criminal history category does not affect the length of his sentence. Although the government contends that the district court applied a downward departure from level 43 to level 35 to create an accurate sentence regardless of Walker's criminal history category, the district court clearly made its downward departure based on a belief that this was the appropriate level in view of Walker's conduct. Since a reduction in criminal history level has an effect on the length of the sentence at level 35, we remand this claim to the district court for the limited purpose of determining and applying the correct criminal history category.

Additionally, Walker contends that the district court erred in failing to state specifically that his sentence was reduced due to credit for time served in state custody on drug charges. If the district court intends for credit for Walker's time served to be governed by 18 U.S.C. § 3585, the determination will be made by the Bureau of Prisons, and the district judge need not specifically state this intention in his judgment order. If the district court reduces Walker's sentence to allow for time served that would not be credited under § 3585, we ask that, for clarity, on remand he note this reason for imposing a reduced sentence as recommended in application note 2 to § 5G1.3 of the Sentencing Guidelines.

### Conclusion

Anthony Walker's conviction is AFFIRMED, but his sentence is VACATED and REMANDED to the district court for further proceedings consistent with this opinion. The judgment of the district court is

AFFIRMED as to all defendants in all other respects.