UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5033

REGINALD MARLIN ISMEL, a/k/a
Reggie, a/k/a New York Junior,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5034

RICHARD DAVID DEGOUT, a/k/a New
York Steve,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-94-8)

Argued: October 28, 1996

Decided: August 7, 1998

Before NIEMEYER and MOTZ, Circuit Judges, and DOUMAR,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Margaret McLeod Cain, Charlottesville, Virginia, for Appellants. Stephen Urban Baer, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Gordon W. Poindexter, Jr., POINDEXTER & SCHORSCH, Waynesboro, Virginia, for Appellant Ismel. Robert P. Crouch, Jr., United States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I. <u>BACKGROUND</u>

The defendants appeal their convictions, arguing (1) that the district court failed to instruct the jury on an essential element of one of the offenses with which they were charged, (2) that the district court erred in permitting the prosecutor to use peremptory challenges to remove minorities from the jury panel, (3) that certain jury incidents should have led the district court to declare a mistrial, (4) that the district court erred in prohibiting the introduction of certain impeachment evidence relating to one of the prosecution witnesses, and (5) that the district court should have struck down a statute that defendants were charged with and convicted of violating, because it punishes those involved with cocaine base much more severely than those involved with cocaine powder. Although the trial court may have improperly instructed the jury regarding the elements necessary to prove a violation of 21 U.S.C. § 848(e)(1)(A), we find that it was harmless error. We further find no merit in the remainder of the assignments of error and affirm the conviction.

2

A. Procedural and Factual History

On March 9, 1994, Reggie Ismel and Richard David DeGout were charged in Count One of a twelve-count indictment with conspiring, in violation of 21 U.S.C. § 846, "[t]o possess with intent to distribute more than 50 grams of cocaine base . . . in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)." Count Two charged both men, "being persons who were engaged in an offense punishable under section 841(b)(1)(A) of Title 21," with intentionally killing or causing the killing of another in violation of 21 U.S.C. § 848(e)(1)(A). Count Three charged DeGout alone with using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and Count Four charged DeGout alone with threatening to kill a witness to the shooting with intent to prevent communication to a law enforcement officer of the United States, in violation of 18 U.S.C. § 1512(a).

A jury convicted Ismel on Counts One and Two and convicted DeGout on Counts One, Two, Three, and Four. The district court sentenced Ismel to concurrent life terms of imprisonment for both his conviction under Count One and his conviction under Count Two. The district court also sentenced DeGout to concurrent life terms of imprisonment for both his conviction under Count One and his conviction under Count Two. In addition, the district court sentenced DeGout to ten years imprisonment for his conviction under Count Four, to run concurrently with the life terms, and to five years for his conviction under Count Three, to run consecutive to the other terms of imprisonment.

The facts relevant to this appeal are sadly familiar. A Bronx (New York City) group of drug dealers expanded their operations to Charlottesville, Virginia. One of the group's members, Orlando Hamilton, was the primary supplier of cocaine base to the Charlottesville community. Ismel became Hamilton's main distributor in Charlottesville. DeGout eventually joined the conspiracy by selling cocaine base with Ismel and by being an enforcer for Ismel. The three were known as JoJo, Junior and Steve.[1] The three lived in the valley of the Bronx and

---

[1] JoJo unfortunately had succumbed to the hazards of the drug trade well before this trial.

3

were wholesalers of drugs. Other individuals came from the Bronx and were retail street dealers. These street dealers were supplied by Ismel or DeGout or Hamilton. These retailers who came from the Bronx were from a different and less affluent part of the Bronx than were the wholesalers.

On November 16, 1992, at the direction of Ismel, DeGout twice shot Anthony L. Jones in the head at point blank range for some alleged wrong Jones had committed in regard to Ismel's "product." Jones subsequently died.

Ismel and DeGout supplied many street dealers with crack cocaine. Eleven of those or their wives or sisters testified as to purchasing from an eight ball to a quarter of a kilogram of cocaine base from Ismel or through him or DeGout on separate occasions from time to time. They then resold the cocaine to others and in turn acquired subsequent crack from the wholesalers. The testimony of the drug retailers was unrebutted as to amounts and purchases from Ismel and DeGout. The defense was centered on the question of the murder of Anthony Jones. The amount of crack which was the product which Ismel was distributing was never in dispute and clearly in excess of fifty grams of crack.

B. The Statutory Problems at Trial

After the close of all evidence at the trial of the defendants, the district court prepared two verdict forms. At that time, the parties did not object to the verdict forms, and they were given to the jury. The forms stated, in relevant part,

> As to Count One of the Indictment, charging [the defendants] . . . with conspiracy to violate 21 U.S.C. § 841(a)(1), we the Jury find the defendant . . . .
>
> As to Count Two of the Indictment, charging [the defendants] with the intentional killing . . . of Anthony Lamont Jones in the course of an offense punishable under 21 U.S.C. § 841(a)(1), we the jury find . . . .

4

JA 42-43 (emphasis added). Instructing the jury on Count One, the district court stated,

> The defendants are charged in Count 1 with conspiring with others to possess with intent to distribute and to distribute cocaine base, a violation of Section 846, Title 21 of the United States Code, which provides in pertinent part that any person who conspires to commit any defense -- any offense defined in this subchapter is punishable as pre-scribed for the offenses, the commission of which was the object of the conspiracy.
>
> Now, Section 841(a)(1) of Title 21 of the United States Code in the same subchapter provides in part: "It shall be unlawful for any person knowingly or intentionally to manu-facture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance."

JA 249-50. Instructing the jury on Count Two, the district court stated,

> In order to find the defendants guilty of the offense charged in Count 2, the Government must prove the follow-ing essential elements beyond a reasonable doubt: First, that the defendants . . . were engaged in an offense punishable by Title 21, Section 841(a)(1), that is, a conspiracy to possess with intent to distribute controlled substances, and distribu-tion of controlled substances; two, that the defendants killed or caused to be killed or aided and abetted the killing of Anthony L. Jones; three, that the defendants did such acts knowingly and intentionally.

JA 253-54 (emphasis added). Count Two of the indictment, however, charged the defendants with violating Section 848(e)(1)(A), which proscribes killing while engaging in an offense punishable under Sec-tion 841(b)(1)(A), not Section 841(a)(1).**2**

_____

**2** Section 848(e)(1)(A) provides:

> (e) Death Penalty. (1) In addition to the other penalties set forth in this section-
>
> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an

5

Section 848(e)(1)(A) in pertinent part requires a person to engage in an offense punishable under section 841(b)(1)(A) while 841(b)(1)(A) requires in pertinent part a violation of section

_____

offense punishable under section 841(b)(1)(A) or section 960(b)(1) [21 USCS § 841(b)(1)(A) or 960(b)(1)] who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to a term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death ...,

while sections 841(a) and (b)(1)(A) provide in pertinent part as follows:

§ 841. Prohibited acts A

(a) Unlawful acts. Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally-

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties. Except as otherwise provided in section 409, 418, 419, or 420 [21 USCS § 849, 859, 860, or 861], any person who violates subsection (a) of this section shall be sentenced as follows:

(i)(A) In the case of a violation of subsection (a) of this section involving-

(I) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of-

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

6

841(a)(1). The Court instructed the jury concerning the requirement that for a conviction of 848(e)(1)(A), one had to prove the conspiracy to distribute controlled substances (in this case cocaine base), as set forth in Section 841(a)(1) but did not instruct the jury that they had to find in accordance with Section 841(b)(1)(A)(iii) that 50 grams or more of cocaine base was involved in the conspiracy.

After the district court charged the jury and the verdict forms had been given to the jury, the government asked the district court to recall the jury and recharge them with the appropriate instruction concerning Section 841(b)(1)(A). JA 260. The government requested this recharging before the jury began deliberations. Id. The court denied this request, but stated, "[i]f they [the jury] raise the question, I'll explain it." JA 260. During the ensuing jury deliberations, the jury foreman did question the district court by writing,"[w]e would like to know the contents of 21 United States Code Section 841(a)(1), please." JA 270. "Consequently, the government again asked for a recharging of the jury concerning the proper reference to Section 841(b)(1)(A). Interestingly, counsel for defendant Ismel opposed any such instruction. See JA 270-77. Accordingly, the court denied the government's request.

After the jury returned with the convictions, the defendants filed a motion for acquittal or mistrial based on the omission in the instructions of the element requiring proof of at least 50 grams of cocaine base as set forth in Section 841(b)(1)(A).

Despite the error, however, the district court found that the jury necessarily made the factual finding that the defendants distributed in excess of fifty grams of cocaine base. Ismel and DeGout were not street dealers. They were wholesale distributors who delivered crack to the retailers.

_____

  (IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base ....

7

II. DISCUSSION

In reviewing the defendants' convictions of violating Section 848(e)(1)(A), we must determine whether conspiracy to distribute fifty grams or more of cocaine base -- as opposed to any quantity of cocaine base -- is an essential element necessary to convict the defendants of violating Section 848(e)(1)(A). If so, then the trial court improperly instructed the jury. If we find the instruction erroneous, however, we must then analyze whether we should notice that error, because of the evidence and the defendant's objection to a corrective instruction.

For the sake of clarity, we begin by considering whether the district court improperly instructed the jury regarding Section 848(e)(1)(A).

A.

In United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990), a panel of our circuit commented on the nature of Section 841(b)(1)(A). In that case, the defendant had been found guilty of possessing cocaine base in violation of Section 841, and the trial court enhanced his sentence pursuant to Section 841(b)(1)(A), which provided a mandatory minimum sentence for possessing with intent to distribute fifty grams or more of cocaine base. The defendant claimed that the government had failed to prove beyond a reasonable doubt that amount of cocaine base, but the panel held that "the quantity of the drug went to the question of Powell's sentence, rather than his guilt, [thus,] the government only had to prove that quantity by a preponderance of the evidence." Id. at 85. Thus, drug quantity was in that case a statutory sentencing factor, not a substantive element of the offense. Id. at 85; see also United States v. Brown, 887 F.2d 537, 540 (5th Cir. 1989)."In addition, because the quantity of drugs only goes to the sentence rather than guilt, trial by jury as to that fact is not required." United States v. Engleman, 916 F.2d 182, 184 (4th Cir. 1990).

A subsequent case, United States v. Patterson , 38 F.3d 139 (4th Cir. 1994), cert. denied, 115 S.Ct. 1968 (1995), built upon this foundation. In that case, the defendants shared illegal drugs with a young woman, who died (apparently from an overdose). The defendants pled

8

guilty to distribution of controlled substances under Section 841(a)(1). At sentencing, the district court found that the death resulted from the drugs provided by the defendants. The district court "adopted the suggested Sentencing Guideline imprisonment range, as modified by the application of § 841(b)(1)(C)." Id. at 142. On appeal, the defendants argued that the government had to prove beyond a reasonable doubt that the death resulted from a violation of 21 U.S.C. § 841(a)(1), "in order to impose the . . . mandatory minimum sentence under 21 U.S.C.A. § 841(b)(1)(C)." Id. at 143.

In rejecting this argument, Patterson instructed that "[i]n determining whether a particular statutory provision is an `essential element of the offense' requiring proof beyond a reasonable doubt or is a `sentencing enhancement' requiring proof only by a preponderance of the evidence, `the legislature's definition of the elements of an offense controls.'" Id. at 143, quoting United States v. Cross, 916 F.2d 622, 623 (11th Cir. 1990). The panel wrote in Patterson,

> we conclude that from a close textual analysis, the mandatory minimum provision in § 841(b)(1)(C) is a sentencing enhancement provision. The plain language contained in § 841(b)(1)(C) clearly indicates that punishment is predicated upon conviction under another statute--21 U.S.C. § 841(a).

> Furthermore, a strong analogy can be drawn from the holdings of this Circuit and others that 21 U.S.C. § 841(b)(1)(A), which provides increased mandatory sentences for violations of § 841(a) involving certain amounts of controlled substances, is a sentencing enhancement provision requiring proof only by a preponderance of the evidence.

Id. (citations omitted).

After reviewing precedent discussing Section 848(e)(1)(A), the statute at issue in the appeal before us today, we have found several cases involving whether conduct involving fifty grams or more of cocaine base is an essential element to prove a violation of Section 848(e)(1)(A). In one of these, the issue was raised. In United States

9

v. Walker, 912 F.Supp. 646, 653 (N.D.N.Y. 1996), aff'd, ___ F.3d ___, 1998 WL 174606 (2d Cir. N.Y. 1998), the defendants were charged with intentionally killing a man while engaging in an offense punishable under Section 841(b)(1)(A), in violation of Section 848(e)(1)(A). In an order settling a preliminary motion, the lower court wrote:

> As a predicate for this Count, the government has charged the defendants with participating in a conspiracy punishable under § 841(b)(1)(A). In order to establish guilt . . ., the government must show <u>not only that the defendants are guilty of a narcotics conspiracy, and that the defendants intentionally killed [the victim] while engaging in that conspiracy, but [also] that the conspiracy involved at least . . . fifty grams or more of cocaine base.</u>

Id. at 653 (emphasis added), also substantially reiterated on appeal in ___ F.3d at ___, 1998 WL 174606, 8 (2d Cir. N.Y.). A discussion of the statutes themselves would bear this out.

In relevant part, 21 U.S.C. § 848(e)(1)(A) provides,

> In addition to the other penalties set forth in this section -- any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death . . . .

21 U.S.C. § 848(e)(1)(A).

21 U.S.C § 841(b)(1)(A), the statutory provision to which Section 848(e)(1)(A) refers, states,

> . . . any person who violates subsection (a) of this section shall be sentenced as follows: . . . In the case of a violation

10

of subsection (a) of this section involving . . . 50 grams or more of a mixture or substance which contains . . . cocaine base . . . shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life . . . .

21 U.S.C § 841(b)(1)(A).

In comparison, 21 U.S.C. § 841(a)(1), to which the district court referred in charging the jury regarding Section 848(e)(1)(A), states,

. . . it shall be unlawful for any person knowingly or intentionally -- to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

21 U.S.C. § 841(a)(1).

The subsections of Section 841(b), of which Section 841(b)(1)(A) is one subsection, provide specific penalties for violating Section 841(a), which prohibits, inter alia, the distribution of certain drugs. Section 841(b)(1)(A) is the subsection of Section 841(b) that provides penalties for those distributing the largest quantities of drugs. In relevant part, Section 841(b)(1)(A) provides stiff penalties for the distribution of greater than fifty grams of cocaine base. Other subsections of Section 841(b) provide lesser penalties for the distribution of lesser quantities of drugs. Therefore, when Congress enacted the relevant part of Section 848(e)(1)(A) and explicitly referred to killings committed while engaging in acts punishable under Section 841(b)(1)(A), Congress obviously intended Section 848(e)(1)(A) to apply only to those killings committed while a defendant engages in the distribution of the larger quantities of drugs discussed in Section 841(b)(1)(A).

It is true that after a conviction of a violation of Section 841(a), a district court can sentence a defendant to the stiff penalties provided in Section 841(b)(1)(A) upon finding by a preponderance of the evidence that the defendant distributed the requisite quantity of drugs. We reaffirm the wisdom of those decisions. Because Section

11

848(e)(1)(A) explicitly and exclusively refers to Section 841(b)(1)(A), however, we believe that proof beyond a reasonable doubt of the distribution of drug quantities set forth in Section 841(b)(1)(A) is a necessary element to prove a violation of Section 848(e)(1)(A). See also United States v. Beckford , 966 F.Supp. 1415, 1425 (E.D. Va. 1997); United States v. DesAnges , 921 F.Supp. 349, 356 (W.D. Va. 1996).

In plain language, then, Section 848(e)(1)(A) specifically requires that the killing occur while the killer is engaging in an offense punishable under Section 841(b)(1)(A). Engaging in an offense punishable under Section 841(b)(1)(A), therefore, is an essential element necessary to prove a violation of Section 848(e)(1)(A). A fortiori, in this case the jury must have found beyond a reasonable doubt that the conspiracy involved ". . . 50 grams or more of a mixture or substance . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(A).**3**

B.

Federal Rule of Criminal Procedure 30, which governs the procedures relating to the charging of the jury in a criminal case, provides in relevant part:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Fed. R. Crim. P. 30 (emphasis added).

In this case, defense counsel did not timely object to the erroneous jury instruction. Somewhat ironically, however, the record indicates

_____

**3** Recently, another panel in this circuit decided that Section 848(e), of which Section 848(e)(1)(A) is a subpart, establishes a separate, substantive offense rather than a mere penalty enhancement. See United States v. NJB, ___ F.3d ___, No. 96-4381, slip op. at ___ (4th Cir. Jan. 6, 1997). We agree, of course, with both that conclusion and the well-reasoned opinion supporting it.

12

that the government did object and request the Court to correct the erroneous jury instruction. The record indicates that the attorney for Ismel opposed the government's requests that the district court properly correct the jury instruction. JA 270-77. This was a somewhat rushed ad hoc exchange concerning a convoluted statute having counter references. For reasons which will become apparent, we find it unnecessary to consider whether or not this constituted "invited error."

The party wishing to assign as error a jury instruction must itself have timely objected to the jury instruction. Fed. R. Crim. P. 30. Thus, although the government objected, Rule 30 still bars the defendants from assigning the misinstruction as error, because the defendants themselves did not object at trial. Federal Rule of Criminal Procedure 52(b), however, limits the otherwise absolute bar in Rule 30. Deceptively simple in content, Rule 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, we should notice the erroneous jury instruction only if the erroneous jury instruction meets the test developed by the Supreme Court to implement Rule 52(b). The test to determine this is clear. As is stated in United States v. Martinez, 136 F.3d 972, 976 (4th Cir. 1998):

> Under Johnson v. United States, ___ U.S. ___, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the district court's erroneous instruction on an element of the offense is subject to harmless error analysis. Johnson, ___ U.S. at ___ ___, 117 S.Ct. at 1548-50. Johnson permits application of the plain error standard set forth in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

. . .

> Applying the Olano test to this case, it is clear that: (1) there is error; (2) the error is plain; and (3) the error "affect[s] substantial rights." Olano, 507 U.S. at 732-35, 113 S.Ct. at 1776-78. It is thus within our discretion to notice and correct the error, if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732, 113 S.Ct. at 1776 (quoting United States v. Atkinson,

13

297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).
In applying the fourth prong of Olano's harmless error test,
we follow the Court in Johnson which considered whether
the evidence on the element was "overwhelming" and "es-
sentially uncontroverted at trial." Johnson, ___ U.S. at ___,
117 S.Ct. at 1550.

The Court in that case found the evidence overwhelming and affirmed
the conviction. A reading of the entire transcript in this case leads
unalterably to the conclusion that the conspiracy had to have been
concerning the distribution in excess of 50 grams of cocaine base. The
evidence was overwhelming and unrebutted and would lead one to
understand why the defense would have objected to the government's
requests. The defense would rather not emphasize the size of the con-
spiracy and the large amount of drugs involved. Here, eleven of the
purchasers of drugs from the defendants were themselves identified
as drug dealers and they or their sisters or wives testified. The testi-
mony was unrebutted and overwhelming that more than 50 grams of
cocaine base was distributed pursuant to the conspiracy.

As discussed previously, the district court committed error in fail-
ing to instruct the jury regarding an element essential to prove a viola-
tion of Section 848(e)(1)(A). Further, that error is plain, because the
error was clear both at the time it occurred and at the time of appeal.
See United States v. Cedelle, 89 F.3d 181 (4th Cir. 1996). In addition,
as another panel of this circuit has recognized,"the failure to instruct
on an element of the crime . . . satisfies Olano's third prong." David,
83 F.3d at 647.

Having found in this case that the error meets all three of Olano's
Rule 52(b) requirements, we then must consider whether we should
exercise our discretion to notice the error. See Olano, 507 U.S. at 736-
37.

In light of these considerations, we believe we should not notice
the error since the only conspiracy shown was one distributing in
excess of 50 grams of crack cocaine and the failure to instruct was
harmless error in this case.

14

III. OTHER ASSIGNMENTS OF ERROR

The defendants' four other assignments of error all lack merit, and need only a brief discussion.

During the jury selection, the defense objected to the prosecution's use of peremptory challenges to two African-American veniremen, apparently basing their objection upon the seminal case, Batson v. Kentucky, 476 U.S. 79 (1986). In response, the prosecution explained that they struck the first venireman because he knew two government witnesses and was related to one of them, and because he was friendly with a woman "who lives in the heart of the drug area." The prosecution explained that they struck the second venireman, because he has a brother who had been convicted of a drug charge, a potential cause of bias. The district court ruled that these reasons were adequate to support the striking of the witnesses, and the court overruled the defendants' motion. Because a trial judge observes the proceedings directly, we will disturb a trial court's finding of the presence or absence of intentional discrimination in ruling on a Batson claim only if such finding is clearly erroneous. See United States v. Grandison, 885 F.2d 143, 146 (4th Cir. 1989). The district court's determinations in this matter are not clearly erroneous, and thus we affirm the district court's overruling of the objection.

During the trial, the defendants apparently wanted to cross-examine a minor prosecution witness regarding an affidavit that the defense claimed the witness had signed some years before the trial. In the affidavit, the witness supposedly alleged that he had been forced by police officers in another jurisdiction to name falsely two men as criminal suspects in 1987. The district court excluded the use of this impeachment evidence, because the court felt that its impeachment value was limited, that the risk of prejudice was great, and that allowing the impeachment evidence would result in a "trial within a trial," necessitating testimony from the involved police officers to counter the witness's claim. We review a district court's restrictions on cross-examination only for an abuse of discretion, see United States v. Ambers, 85 F.3d 173, 175 (4th Cir. 1996), and we find that the district court was well within its discretion in so limiting the cross-examination.

Also during the trial, a few minor incidents involving the jury occurred. First, one juror wrote a note to the court, asking the court

15

if he would be protected by federal law after the trial ended. The district court overruled the defense's subsequent motion for mistrial, and replaced the juror with one of the alternate jurors. Second, as another of the jurors was leaving the jury box at the commencement of a recess in the trial, the juror made a short comment, expressing recognition of one of the prosecution's witnesses. The district court overruled the defense's subsequent motion for mistrial, citing the impossibility of avoiding instances of juror-witness familiarity in small communities such as Charlottesville, Virginia. Finally, a third juror wrote a note to the district court, advising the court that the trial was placing an undue strain on her employer and that she was planning to be a member of a wedding party in two days. Again the defense requested a mistrial, but the district court simply replaced the juror with another alternate juror.

The defendants argue that mistrial should have been granted after one or all of these incidents. We disagree. First, Federal Rule of Criminal Procedure 24(c) gives the trial court discretion to seat alternate jurors if the court finds that a juror is unable or disqualified from performing her duties. Second, and more importantly, these incidents truly were minor, indeed. The genius of the jury system is that ordinary people populate juries, and we expect ordinary people to have complaints, questions, and problems. Because trial judges have the opportunity to observe the jury, we are not inclined to second-guess a trial judge's handling of such unremarkable complaints, questions, and problems. None of the three minor incidents called into question by the defendants lead us to worry that the defendants did not receive a fair trial. Accordingly, we reject their arguments here.

In the defendants' final assignment of error, they argue that the district court should have ruled, sua sponte, that federal laws punishing crimes involving cocaine base more harshly that crimes involving powder cocaine violate the Equal Protection Clause, because black drug users more often choose cocaine base over powder cocaine than do white drug users. We have previously rejected this argument, see United States v. Jones, 18 F.3d 1145, 1151 (4th Cir. 1994), and we see no reason to question that precedent here and, therefore, the convictions are affirmed.

AFFIRMED

16