**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5464

ARNOLD L. H. AMBERS, JR., a/k/a
Heavy,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-94-28)

Argued: April 5, 1996

Decided: June 3, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** John F. McGarvey, Richmond, Virginia, for Appellant.
John A. Horn, Law Intern, University of Virginia School of Law,
Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P.
Crouch, Jr., United States Attorney, Jean B. Hudson, Assistant United
States Attorney, Charlottesville, Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Appellant Arnold L. H. Ambers, Jr. was convicted of conspiracy to possess and distribute crack cocaine, and was sentenced to 248 months in prison. On appeal, Ambers asserts that the district court abused its discretion by barring him from discussing the operation of the Sentencing Guidelines when cross-examining government witnesses. He also challenges his sentence, alleging that he should have received a downward departure under 18 U.S.C. § 3553(b), and that enhancing his sentence based on a prior conviction violated the Double Jeopardy Clause. We affirm in all respects.

I.

On September 8, 1994, a grand jury indicted Ambers and several other individuals of conspiracy to possess and distribute crack cocaine. 21 U.S.C. § 841(a)(1). Trial began on February 13, 1995. During his opening statement, Ambers' counsel called into question the motivation of several government witnesses who were to testify after having executed plea agreements:

> They will be testifying because they are getting something out of it, and the something that anybody who is charged in these cases is going to get out of it is the hope of what is called a 5K1.
>
> Now, when someone is charged with conspiracy, that carries ten to life. Under the facts as presented by the United States Attorney's office, what the majority of these people are going to be coming in at is over 1.5 kilograms of crack cocaine. That is what is called Level 38. Now, Level 38
> . . . .

The government objected at this point, and the district judge instructed Ambers' counsel that "I'm not going to permit you to argue penalty."

2

The judge clarified his position in a conference in chambers. "[T]he defense is certainly entitled to show that there is a serious potential penalty afflicting or potentially afflicting these witnesses," he advised. He thus thought it "proper to inquire about whether they're facing a serious penalty, and serious in terms of time in prison, so on," including "the fact that the penalty is ten years to life." But, he cautioned, "[w]e're not going into the Sentencing Guidelines at all," because such a discussion would only confuse the jury.

During the trial, the government sought to establish that Ambers supplied crack cocaine to a large distribution ring in Fluvanna County, Virginia. Several law enforcement officers described Ambers' role in the drug conspiracy. The government also presented the testimony of thirteen witnesses who had executed plea agreements, many of whom were co-conspirators. Some testified that they had bought crack cocaine from Ambers, others that they had seen Ambers sell crack cocaine, and others that they had heard that Ambers supplied crack cocaine to local dealers.

In his cross-examination of these witnesses, Ambers' counsel asked whether they hoped to gain favorable sentencing treatment as a result of their testimony. He questioned several about the nature of their plea agreements, including the minimum and maximum penalties for their offenses. He also asked about provisions in their plea agreements allowing for a reduced sentence under U.S.S.G. § 5K1.1 for providing "substantial assistance" to the government. In addition, Ambers' counsel introduced into evidence the plea agreements of seven of the witnesses.

On February 16, 1995, the jury found Ambers guilty of conspiring to distribute crack cocaine. The sentencing hearing was held on May 26. The applicable range under the Sentencing Guidelines for Ambers' offense was 235 to 292 months in prison. Ambers, though, had a prior conviction in 1989 for possession of cocaine with intent to distribute, and was thus subject to a minimum sentence under 21 U.S.C. § 841(b)(1)(A) of 240 months. The district judge imposed a sentence of 248 months. Ambers appeals both his conviction and his sentence.

II.

Ambers' first claim is that the district judge improperly prevented him from questioning government witnesses about the precise effect of the Sentencing Guidelines on their pending sentences. Consequently, Ambers alleges, he was unable to sufficiently expose a possible motivation for their testimony. We disagree. A district court's restrictions on cross-examination are reviewed for abuse of discretion. See United States v. Piche, 981 F.2d 706, 716 (4th Cir. 1992), cert. denied, 508 U.S. 916 (1993). Here, the district court acted within the scope of its considerable discretion in fashioning the reach of Ambers' cross-examination.

To be sure, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis v. Alaska, 415 U.S. 308, 316-17 (1974). Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see United States v. Morsley, 64 F.3d 907, 918 n.10 (4th Cir. 1995) (commenting on "the broad latitude afforded a trial judge in controlling cross-examination"), cert. denied, 116 S. Ct. 749 (1996).

These same principles hold true when cross-examination pertains to the motivation of a witness testifying for the government. Based on the sorts of concerns mentioned above, trial judges have sometimes exercised their broad discretion to limit inquiry into the potential sentences faced by a cooperating witness. See United States v. Luciano-Mosquera, 63 F.3d 1142, 1153 (1st Cir. 1995) (upholding restriction of cross-examination on penalty witness would have faced had government not dropped charges); United States v. Nelson, 39 F.3d 705, 707-09 (7th Cir. 1994) (upholding restriction of cross-examination on penalty witness would have faced without executing plea agreement); Brown v. Powell, 975 F.2d 1 (1st Cir. 1992) (same), cert. dismissed, 506 U.S. 1073 (1993); United States v. Dadanian , 818 F.2d 1443, 1449 (9th Cir. 1987) (same), modified on other grounds, 856 F.2d 1391 (1988).

4

The critical question, we have observed, is whether the defendant is allowed an opportunity to examine a witness"'subjective understanding of his bargain with the government,""for it is this understanding which is of probative value on the issue of bias." Hoover v. Maryland, 714 F.2d 301, 305, 306 (4th Cir. 1983). Here, Ambers had ample freedom to explore the government witnesses' subjective motive for testifying. His counsel asked the witnesses whether they were testifying to gain a reduced sentence, quizzed them about their understanding of the substantial assistance reduction under U.S.S.G. § 5K1.1, questioned them about their plea agreements, and asked them about the penalties they faced.* He also requested that they read from their plea agreements and entered several of the agreements into evidence. In his closing argument, Ambers' counsel asserted: "Every one of those witnesses had an absolute motive to lie. Every one of them knew the scenario. Every one of them knew what ultimately had to be said to get that substantial assistance motion, and every one of them did it."

The sole restriction imposed on Ambers was on examining precisely how a witness' potential sentencing reduction fit into the structure of the Sentencing Guidelines. He could not explain, for instance, that a witness facing a sentence of ten years to life was being treated as a "Level 38" offender. This limitation was simply meant to avoid distracting the jury with a technical analysis of the Guidelines, an analysis that would shed little light on a witness' subjective under-

_____

*Some of the questions Ambers' counsel asked of various witnesses include: "I think you said you're here today trying to help yourself; correct?" . . . "So you do expect to gain something out of your testimony for this?"; "And you agreed to give truthful testimony in the hopes of receiving a 5K1?"; "Within that plea agreement it indicates that if you cooperate with the government, you will receive what's called . . . a 5K1 motion; is that correct?"; "[P]art of why you're here today is to get what's called a 5K1 motion; is that correct?";"[D]o you understand what a 5K1 motion is?"; "[Y]ou read over your plea agreement; is that correct? . . . And when [the U.S. Attorney] was asking you whether or not you expected to get something out of this, you were made aware of what the . . . penalties are here?"; "The minimum mandatory and maximum penalties for this offense [are] . . . ten to life; is that correct?"; "[Y]ou testified here today that you had hopes that someone would be lenient on you as far as time; is that correct?"

5

standing of his plea agreement. Such grounds for controlling cross-examination are appropriate. Van Arsdall, 475 U.S. at 679 (allowing restrictions designed to prevent "confusion of the issues" and "repetitive" questioning). When faced with identical circumstances, the Second Circuit ruled:

> We also reject the contention that the trial court erred when it barred the questioning of cooperating witnesses as to what effect the Guidelines would have on their sentences. The court permitted cross-examination of those witnesses as to their plea agreements, the statutory maximum sentences they faced, and the benefits they hoped to gain from cooperation. The court was well within its discretion in ruling that the vagaries of Guidelines calculations were not a proper subject for cross-examination.

United States v. Rosa, 11 F.3d 315, 336 (2d Cir. 1993), cert. denied, 114 S. Ct. 1565 (1994).

We agree with this reasoning. To entitle defense counsel to explore the intricacies of the Guidelines scheme on cross-examination might do much to confuse lay jurors and little to enlighten them. The district court allowed Ambers abundant opportunity to explore the motivation of the government witnesses in testifying. The court plainly did not abuse its discretion in preventing Ambers from delving into the details of the Sentencing Guidelines.

III.

In his second assignment of error, Ambers asserts that he should have received a downward departure in his sentence under 18 U.S.C. § 3553(b). That provision authorizes departure where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see U.S.S.G. § 5K2.0. Ambers bases his argument on the Commission's recent recommendation that Congress abolish the sentencing distinction in the Guidelines between crack and powder cocaine, a recommendation that Congress has since rejected. See Pub. L. No. 104-38, 109 Stat. 334

6

(1995). The Commission's proposal, Ambers contends, illustrates that it had failed to consider the appropriateness of the crack-powder distinction when initially drafting the Guidelines.

Ambers' claim fails for many reasons. Simply because the Commission proposes a revision does not mean that it failed adequately to consider the existing policy; the Commission did consider the crack-powder distinction when formulating the Guidelines. See United States v. Alton, 60 F.3d 1065, 1068-69 (3d Cir.), cert. denied, 116 S. Ct. 576 (1995). And at any rate, the broad issue of proper sentencing levels for crack cocaine offenses does not involve the sort of individual, case-specific mitigating circumstance justifying a departure under 18 U.S.C. § 3553(b). See United States v. Bynum, 3 F.3d 769, 775 (4th Cir. 1993), cert. denied, 114 S. Ct. 1105 (1994). Finally, Congress has rejected the Commission's recommendation to abolish the crack-powder distinction, voting instead to preserve the higher sentences for crack-related crimes. Pub. L. No. 104-38, 109 Stat. 334 (1995). And "every appellate court that has considered the matter has held that the impact of the guideline treatment of crack cocaine is not a proper ground for downward departures." Alton, 60 F.3d at 1070; see Bynum, 3 F.3d at 769, 774-75. For these reasons, Ambers plainly does not qualify for a downward departure under 18 U.S.C. § 3553(b).

IV.

Ambers also challenges his sentence on double jeopardy grounds. His argument stems from the use of his 1989 conviction to subject him to the mandatory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(A). The prior offense, Ambers observes, was one of the overt acts supporting the conspiracy charge against him. Use of that same offense to enhance his sentence under the mandatory minimum statute, Ambers asserts, amounts to punishing him twice for the same conduct, in violation of double jeopardy principles.

This argument, however, misconceives the nature of a conspiracy offense. A conspiracy is a distinct crime from the overt acts that support it. See United States v. Felix, 503 U.S. 378, 389-92 (1992); United States v. Bayer, 331 U.S. 532, 542 (1947) ("the same overt acts charged in a conspiracy count may also be charged and proved

7

as substantive offenses"). As a result, "prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause." Felix, 503 U.S. at 380-81.

Enhancing the sentence for conspiracy because of a prior conviction, where one of the overt acts supporting the conspiracy resulted in the prior conviction, likewise presents no double jeopardy problem. The enhancement increases the sentence for the current offense (conspiracy), not the sentence for the distinct, prior offense: "Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common place in state criminal laws, do not change the penalty imposed for the earlier conviction." Nichols v. United States, 114 S. Ct. 1921, 1927 (1994); see Gryger v. Burke, 334 U.S. 728, 732 (1948). Based on this logic, the Supreme Court has consistently rejected double jeopardy challenges to sentencing schemes that enhance a defendant's sentence because of a prior conviction. Witte v. United States, 115 S. Ct. 2199, 2206 (1995).

The application of 21 U.S.C. § 841(b)(1)(A) against Ambers thus does not punish him twice for the same offense. His conspiracy offense and his prior offense are distinct crimes. The statute simply increases the sentencing range for his current conviction based on a distinct, prior offense, the sort of penalty enhancement that presents no double jeopardy issue.

V.

For the foregoing reasons, the judgment in this case is

AFFIRMED.

8