JOURNAL ENTRY and OPINION
{¶ 1} Darrell Strowder appeals following a jury conviction on charges of robbery, aggravated robbery, felonious assault and attempted murder. He claims that there was insufficient evidence to support his conviction, that it was against the manifest weight of the evidence, and that the imposed sentence violated his due process rights. He additionally claims that the trial court erroneously limited cross-examination, violated his constitutional rights when it failed to remove a juror, and allowed an alleged oral statement to be admitted. We reverse and remand.
 {¶ 2} The record reveals that at approximately 10:30 p.m. on April 13, 2004, Karen Wallace walked to her parked car on East 81st Street when a man wearing a dark jacket, with a hooded sweatshirt underneath, a mask, and a baseball cap approached her and demanded the keys to her red Mitsubishi SUV. The man pointed a silver gun at her. Shortly thereafter, a second assailant, wearing a lighter colored jacket and hooded sweatshirt, appeared from the passenger side of her car. The men then drove off in her car.
 {¶ 3} Sometime around 1:00 a.m., Michael Buyous and two other men were standing at a bus stop at West 91st Street and Detroit when a red car carrying three men drove past the bus stop very slowly. Two of the men were wearing masks, while the driver was unmasked. The car circled back, and the two masked men carrying guns jumped out of the car and ordered the victims to strip and empty their pockets. One assailant took Buyous's cell phone and money and then hit him on the side of his head with the gun, cutting both his right eye and jaw line. Buyous later described his assailant as five feet seven inches, wearing a blue bubble jacket and carrying a silver gun. He described the second attacker as five feet six inches to five feet seven inches. The driver of the car, who was unmasked, Buyous later identified as Donquell Howard. After the robbery and assault, the three men jumped back into the Mitsubishi and drove off, while the remaining two victims boarded the RTA bus and left the scene.
 {¶ 4} Shortly after the bus stop attack, Philip Pendleton was driving his 1994 Beretta on East 71st and Euclid when he noticed a red Mitsubishi carrying three people. Pendleton continued driving to his apartment complex off of East 82nd Street and parked his car. Immediately, the Mitsubishi pulled in front of his car and a man jumped out from the driver's seat holding a gun. Pendleton put the car in reverse to escape; however, the assailant ran along side Pendleton's car and pointed a black revolver at him. Pendleton stopped the car, and the driver demanded his money. When Pendleton informed the man that he did not have any money, his assailant then demanded his clothing. He removed his yellow, brown and white Enyce jogging suit, a Padres hat, Timberland boots, and a black leather coat lined with sheepskin. The man with the black revolver jumped into the back seat of the car, while the other two men took Pendleton's clothing. The assailant in the back seat then struck Pendleton in the head, which blow caused Pendleton to receive seven stitches on his nose and three on his head. Pendleton later described his assailant as five feet six inches to five feet seven inches, wearing lots of sweatshirts, a black jacket and dark jeans, and disguised by a black velcro-nylon stretch mask. The tallest assailant, whom he later identified as Howard, did not wear a mask but had on a brown plaid shirt and tan pants. The third assailant wore a ski mask and a military fatigue style jacket.
 {¶ 5} Sometime around 3 a.m., Delmar Yarbrough left the Wolf's Den Tavern to drive his employee, Carol Black, home. As Yarbrough was driving his P.T. Cruiser down Ansel Avenue, he noticed a red Mitsubishi speeding toward him. The Mitsubishi then attempted to run him off the road, so Yarbrough slammed on his brakes in an effort to force the Mitsubishi to pass. Two masked men carrying guns jumped out of the Mitsubishi and ran toward the car; Yarbrough, however, put his car into reverse to escape. One of the men fired at the P.T. Cruiser and hit the car once in the driver's side door and once in the car's radiator. Although Yarbrough believed there were four men in the car, he could give descriptions of only two: one as five feet eight inches, weighing between 150-160 pounds, wearing an orange shirt and carrying a silver gun. The second masked man was described as six feet tall and wearing a jean jacket.
 {¶ 6} Shortly after 3:00 a.m., Abu Hassan Ali, James Dailey and Rachel Tanner were driving in Ali's Cadillac Escalade at East 120th Street and Sellers Avenue in Cleveland when a red Mitsubishi sideswiped the car. After hitting the Escalade, two masked men holding guns jumped out of the Mitsubishi and demanded that Ali and Dailey exit the car. Tanner remained in the back seat of the car hiding. The masked men struck Dailey in the face with a gun and he fell to the ground. They ordered him to remove his jewelry, his gold and white Enyce racing jacket, and Pirates baseball cap. The men then demanded Ali's clothing and his jewelry. The assailants then jumped into the Escalade where they discovered Tanner hiding in the back. They demanded that she give them her cell phone and exit the car, and she complied. The men then drove away, following the red Mitsubishi.
 {¶ 7} Dailey believed that four men were involved in the incident, but could describe only two men: one wearing a royal blue flannel shirt and ski mask, and the second wearing all black and a ski mask. Tanner believed that there were only three men. She described the third man as having a medium build and full face and wearing a white t-shirt and blue jeans.
 {¶ 8} Fifteen minutes after the Escalade robbery, Robert Calloway was talking on his cell phone at the Marathon gas station on East 140th and Rugby when someone said, "lay it down." He noticed a white truck with four men coming toward him. One man aimed at Calloway and shot him in the elbow. Three of the men ran away while the shooter went through Calloway's pockets.
 {¶ 9} Around 4:00 a.m. on the same night, the police recovered the stolen Escalade and took a suspect in custody who was later identified as Donquell Howard. The police drove Tanner to a Citgo station to make an identification of the man wearing a white shirt and jeans, but she was unable to identify him.
 {¶ 10} After being taken into custody, Howard implicated Darrell Strowder, Thompson, and Witherspoon in the robberies. Although Howard was originally indicted on twenty counts for acts related to this and one other incident, he entered into a plea agreement and agreed to testify on behalf of the State to receive a greatly reduced sentence of eight years. Witherspoon also accepted a plea bargain and received twelve years for his involvement.
 {¶ 11} A Grand Jury returned a twenty-one count indictment against Strowder. In November 2004, Strowder was tried to a jury. He was convicted of one count of robbery, in violation of R.C.2911.02, as amended in count one; two counts of aggravated robbery, in violation of R.C. 2911.01; one count of felonious assault, in violation of R.C. 2903.11; and two counts of attempted murder, in violation of R.C. 2923.02/2903.02. He was found not guilty of any of the accompanying gun specifications. At sentencing, the trial court imposed sentences of two years on the robbery count, three years on each of the aggravated robbery counts, two years on the felonious assault charge, and both a seven-year sentence and a three-year sentence for the attempted murder counts, sentences to run consecutive, for a total sentence of twenty years.
 {¶ 12} Strowder appeals from his conviction and sentence in the assignments of error set forth in the appendix to this opinion.
I. CROSS-EXAMINATION
 {¶ 13} In his third assignment of error, Strowder contends that the court erred by limiting the substance of his cross-examination in violation of his sixth amendment rights. He asserts that the trial court prevented him from asking Howard about the potential penalty that he was facing if he had chosen not to accept the plea.
 {¶ 14} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In Maryland v.Craig, the United States Supreme Court held that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." (1990), 497 U.S. 836, 845, 110 S.Ct. 3157.
 {¶ 15} In State v. Self (1990), 56 Ohio St.3d 73, 78, the Ohio Supreme Court held that the court's interpretation of Section 10, Article I of the Ohio Constitution has paralleled the United States Supreme Court's interpretation of theSixth Amendment in that the primary purpose of our Confrontation Clause "is to provide the accused an opportunity for cross-examination." Id., quoting Henderson v. Maxwell (1964), 176 Ohio St. 187 at 188; see, also, State v. Spikes (1981), 67 Ohio St.2d 405,412-413, State v. Madison (1980), 64 Ohio St.2d 322, 330-331. The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. State v. Lundgren,73 Ohio St.3d 474, 487, 1995-Ohio-227.
 {¶ 16} In State v. Gonzales (2002), 151 Ohio App.3d 162, the court found that in order to determine whether a defendant'ssixth amendment right has been violated, the court must determine whether "the jury had sufficient information to make a discriminating appraisal of the witness's motives and bias." Id., quoting United States ex rel. Ashford v. Director, Ill. Dept. of Corr. (C.A.7, 1989), 871 F.2d 680, 683. The Gonzales court went on to find that the primary question in this context is whether a defendant has been afforded an opportunity to expose a cooperating witness's subjective understanding of his plea bargain because it is the witness's subjective understanding that is probative of bias or motive. See United States v. Ambers
(C.A.4, 1996), 85 F.3d 173, 176.
 {¶ 17} The State relies on Gonzales for the proposition that the pertinent inquiry is what a witness believed his sentence would have been, rather than the actual sentence. In the instant case, however, the record indicates that Howard was facing a possible sentence of over 100 years. Howard admitted on cross-examination that he was originally indicted on twenty counts including: felonious assault, attempted murder, robbery, aggravated robbery, and numerous gun specifications. (Tr. 646) In an earlier statement, Howard contradicted this testimony and said that prior to accepting a plea bargain, he was originally charged with "10, 11 counts." (Tr. 643) It is clear from the transcript that Howard fluctuated between the number of counts that he was charged with, and there is some question then as to what Howard understood what his total sentence would have been had he not entered a plea.
 {¶ 18} By preventing counsel from questioning Howard from challenging his actual understanding of what sentence he was facing, the trial court abused its discretion.
 {¶ 19} Strowder's third assignment of error has merit.
II. JUROR
 {¶ 20} In his fourth assignment of error, Strowder claims error in the trial court's failure to remove a juror who admitted a friendly relationship with at least one of the victims. He further claims that this error deprived him of his right to a fair trial.
 {¶ 21} Crim.R. 24(F) provides that "[a]lternate jurors * * * shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties * * *." Further, a trial court has discretion to determine whether a jury can serve impartially. State v. Nields, 93 Ohio St.3d 6, 20,2001-Ohio-1291, citing State v. Williams (1983),6 Ohio St.3d 281, 288. Following voir dire and following the testimony of several witnesses, juror 11 informed the court that he knew witness Delmar Yarbrough. (Tr. 420) The court conducted an in camera interview with the juror where counsel for both Strowder and the State were permitted to question the juror. The juror informed the parties that he bowled with Yarbrough every summer, seeing him weekly for six-week periods, and confessed that he would additionally see him year round during bowling tournaments. (Tr. 421) He then stated that he socialized with Yarbrough outside of bowling and frequently went into his bar, the same bar that he was leaving on the night of the robbery. (Tr. 422) Although the juror stated that his relationship with Yarbrough did not affect him, he expressed additional feelings to the court in the following exchange:
"THE COURT: Would you feel comfortable going back into his bar, say, if the State fails to meet its burden of proof beyond a reasonable doubt as to his — his count or any other counts, would you feel comfortable going back to his bar and say, listen, hey, the State just didn't make its burden, you know, I had to do what I had to do."
JUROR No. 11: That I might not feel comfortable doing.
* * *
THE COURT: Let me put it to you this way, Mr. Moore. If it came down to accepting your oath and judging Mr. Yarbrough's credibility just as you would any other witness as opposed to not going back in his bar, what would you do?
JUROR NO. 11: I'd probably not go back into his bar, do the oath." (Tr. 423-427)
 {¶ 22} Strowder's counsel then moved to dismiss the juror, which motion the court denied.
 {¶ 23} The State cites to State v. Woodards (1966),6 Ohio St.2d 14, for the proposition that the fact that a juror is acquainted with a witness does not necessarily affect the juror's impartiality. Woodards, held that,
"The fact that a person selected to serve as a juror at the trial of one charged with murder in the first degree is acquainted with the sheriff and a deputy sheriff who was a witness for the prosecution and has procured an insurance policy for that witness does not prejudice defendant's right to a fair and impartial trial, where the opportunity was present for defendant's counsel to ascertain this fact, and where there is no evidence that the juror was prejudiced against the defendant by reason of such acquaintance." Id. at ¶ 3 of the syllabus.
 {¶ 24} The facts in the instant case, however, are distinguishable from Woodards. While the court in Woodards
found that there was no evidence of prejudice to the defendant's right of a fair trial, in the instant case, Juror No. 11 could commit nothing stronger than a guarantee that he would "probably" not return to Yarborough's bar, and "do the oath." Such an indication does not present the necessary strength to show that the juror is not prejudiced by his relationship with one of the victims.
 {¶ 25} This assignment of error has merit.
III. ORAL STATEMENT TO POLICE
 {¶ 26} In his fifth assignment of error, Strowder claims that the trial court erroneously allowed Detective Peters to testify at trial regarding his earlier statements to police after the court had previously suppressed Strowder's written police statement.
 {¶ 27} The record reveals that Strowder gave a written statement to police regarding his involvement with the crimes. Counsel moved to suppress both this statement and any oral statement because Strowder selected "no" on the statement form regarding his desire to make an official statement and because he failed to sign the statement indicating its accuracy. The trial court granted this motion solely as to the written statement.
 {¶ 28} However, Strowder moved to suppress both his oraland written statements because both statements contained virtually identical information. Although the trial court granted the motion as to the written statement, it then found that the oral statement should be admitted because Strowder was "familiar with the system" and "has been interrogated before." (Tr. 136) An alleged familiarity with the system does not replace the duty to duly guarantee that the safeguards necessary in each individual case are met.
 {¶ 29} Detective Peters testified that Strowder admitted being in both the Mitsubishi and the Escalade and being at the shooting and further admitted to receiving $15 from another robbery. By allowing this statement to be admitted into evidence, the trial court essentially allowed the jury to have the same access to the written statement that it had suppressed earlier.
 {¶ 30} We find that the trial court abused its discretion in admitting Detective Peters to testify regarding Strowder's oral statement to police.
 {¶ 31} Strowder's fifth assignment of error has merit.
 {¶ 32} As a result of our resolution on these assignments of error, we find Strowder's assignments one, two and six moot.
 {¶ 33} We reverse the decision of the trial court and remand for a new trial.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., Concurs
 Calabrese Jr., J., Dissents (See Separate Dissenting OpinionAttached).
 APPENDIX A ASSIGNMENTS OF ERROR
 "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAINAPPELLANT'S CONVICTIONS.
 II. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFESTWEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED BY LIMITING THE SUBSTANCE OFCROSS-EXAMINATION IN VIOLATION OF APPELLANT'S SIXTH AMENDMENTRIGHT OF THE UNITED STATES CONSTITUTION.
 IV. THE TRIAL COURT ERRED BY FAILED [SIC] TO REMOVE A JURORWHOM [SIC] ADMITTED A FRIENDLY RELATIONSHIP WITH AT LEAST ONE OFTHE VICTIMS DENYING APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIRTRIAL.
 V. THE TRIAL COURT ERR [SIC] IN ALLOWING THE STATE TOINTRODUCE APPELLANT'S ALLEGED ORAL STATEMENT WHEN SUCH STATEMENTWAS RECEIVED IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS.
 VI. THE TRIAL COURT ERRED BY IMPOSING A SENTENCE IN VIOLATIONOF THE FIFTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATESCONSTITUTION AND ARTICLE ONE SECTION 16 OF THE OHIOCONSTITUTION."
 COURT OF APPEALS OF OHIO, EIGHTH DISTRICT COUNTY OF CUYAHOGA NO. 85792
STATE OF OHIO : :
Plaintiff-Appellee : : D I S S E N T I N G :
vs. : O P I N I O N :
: DARRELL STROWDER : :
Defendant-Appellant :
DATE: FEBRUARY 2, 2006