**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-5142**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID JOE SHELTON,

Defendant - Appellant.

———————————

Appeal from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, Chief District Judge. (CR-04-45)

———————————

Submitted: August 23, 2006          Decided: September 14, 2006

———————————

Before WILKINSON and KING, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————————

Affirmed by unpublished per curiam opinion.

———————————

David D. Walker, DAVID D. WALKER, P.C., Salem, Virginia, for Appellant. Dennis H. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

David Joe Shelton appeals his convictions and sentence for conspiracy with intent to distribute at least 111,940 40-milligram oxycodone tablets, in violation of 21 U.S.C. § 841(a)(1) (2000) (Count One), possessing with intent to distribute at least the same quantity of oxycodone tablets, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (2000) (Count Three). Finding no reversible error, we affirm.

Shelton's first issue on appeal is that the district court abused its discretion in limiting his cross-examination of the Government's cooperating witnesses. Shelton contends the court impermissibly restricted his ability to effectively cross-examine the Government's witnesses by prohibiting cross-examination on the potential punishments the cooperating witnesses would have faced had they not elected to cooperate with the Government.

A district court's decision to limit cross-examination is reviewed for abuse of discretion. United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002). Under the Confrontation Clause, a defendant has the right to cross-examine witnesses who are cooperating with the Government about potential sources of bias. United States v. Cropp, 127 F.3d 354, 358 (4th Cir. 1999). However, the trial court retains the discretion to place reasonable limits on cross-examination based on concerns about, among other

- 2 -

things, harassment, prejudice, confusion, repetition, or relevance. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). This court has "upheld restricting cross-examination to the minimum and maximum penalties the cooperating government witness was facing, whether the cooperating government witness was testifying to gain a reduced sentence, and the terms of his plea agreement concerning a downward departure." Scheetz, 293 F.3d at 184 (citing United States v. Ambers, 85 F.3d 173, 176-77 (4th Cir. 1996). An improper denial of an opportunity to examine a witness for bias is subject to harmless error review. United States v. Turner, 198 F.3d 425, 430-31 (4th Cir. 1999).

With this framework in mind, we conclude the limitation imposed did not amount to an abuse of discretion. Pursuant to its ruling on the Government's motion in limine, the court prohibited defense counsel from asking the witnesses detailed questions regarding the possible sentences they might have faced had they not cooperated with the Government. However, the court did permit counsel to ask general questions of the Government's witnesses, such as whether they had secured a favorable bargain by assisting the Government or whether the Government had agreed to forego criminal prosecution in its entirety. Restricting counsel from delving into the particular details of the potential sentences each witness could have, but did not necessarily face was an appropriate discretionary limitation; even with this limitation, Shelton's

attorney ably illustrated that each witness had a motive for testifying against Shelton. It was then up to the jury to determine how much weight each witness's testimony should be given in light of that motivation. To have allowed further questioning on this issue would have simply been repetitive and distracting.

Shelton next argues the Government violated his rights under Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over impeachment evidence. To prove a Brady violation, a defendant must show he requested the undisclosed evidence and it was (1) favorable; (2) material; and (3) that the prosecution had it and failed to disclose it. See Moore v. Illinois, 408 U.S. 786, 794-95 (1972); United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001). Evidence is "favorable" not only when it would tend to exculpate the accused, but also when it can be used to impeach Government witnesses. See United States v. Bagley, 473 U.S. 667, 676 (1985); United States v. Trevino, 89 F.3d 187, 189 (4th Cir. 1996). Evidence tending to impeach a Government witness must be disclosed to a defendant if known to the Government. Giglio v. United States, 405 U.S. 150, 153-55 (1972). Evidence is material if there is a reasonable probability its disclosure would have produced a different outcome. See Bagley, 473 U.S. at 682; United States v. Kelly, 35 F.3d 929, 936 (4th Cir. 1994). A "reasonable probability" of a different result is shown when the Government's

failure to disclose evidence "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678.

Shelton's Brady claim is predicated on a statement from a confidential informant ("CI"), Teresa Christian, regarding three controlled purchases of OxyContin she made from another individual involved in the drug conspiracy, Jerry Palmer. The defense maintains that, although the Government did not call Ms. Christian to testify, the defense could have used her statement to impeach another Government witness, Melissa Rowe. Ms. Rowe testified to the nature of Shelton's relationship with Palmer and the frequency with which she purchased narcotics from both men.

Shelton's argument fails for two reasons. First, because Ms. Christian's statement did not actually contradict Ms. Rowe's trial testimony, the statement had no impeachment value. However, even if the statement did have some measure of impeachment value, the argument nonetheless fails because the Government properly disclosed Ms. Christian's statement to counsel. The record reveals that, prior to trial, defense counsel received a copy of the transcript from the tapes of Ms. Christian's controlled purchases, as well as the tapes themselves, and that the prosecutor particularly identified Ms. Christian as the CI involved in those controlled purchases; defense counsel conceded as much at the post-verdict hearing on Shelton's motion for judgment of acquittal and a new trial.

Shelton next maintains the district court abused its discretion in failing to instruct the jury that it could not convict Shelton of either Count One or Count Three simply because the evidence established the existence of a buyer-seller relationship. We review a district court's decision regarding whether to give a jury instruction, and the content of that instruction for an abuse of discretion. United States v. Burgos, 55 F.3d 933, 935 (4th Cir. 1995). The facts of this case reveal no such abuse of discretion. In fact, the record establishes that the district court included the requested language in its instruction relevant to Count Three, the CCE charge. Further, although the district court did not present this particular language in its instruction on Count One, as Shelton acknowledges in his brief, the district court sua sponte dismissed the conviction on this count. Thus, even assuming the court should have included the requested language, any potential error is moot.

Shelton's penultimate argument is that the evidence presented at trial was insufficient to support the guilty verdict on Count Three because the evidence did not conclusively show that he managed or supervised five or more individuals. This court reviews the denial of a Rule 29 motion de novo. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005). Where, as here, the motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial

evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). This court "ha[s] defined 'substantial evidence' as 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Alerre, 430 F.3d at 693 (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). This court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). This court "may not weigh the evidence or review the credibility of the witnesses." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

To prove a CCE, the Government must show: (1) the defendant committed a felony violation of federal narcotics laws; (2) the crime was part of a continuing series of such violations; (3) the series of violations was undertaken in agreement with at least five other persons; (4) the defendant managed, supervised, or organized these other persons; and (5) the defendant received substantial income or resources from the enterprise. United States v. Stewart, 256 F.3d 231, 254 (4th Cir. 2001). We have explained that lower courts are to give a "common sense" construction to the management element, "bearing in mind that the statute is intended to reach the leaders of the drug trade." Id. at 255. To establish

- 7 -

the management element, the Government need not "prove that the five individuals were supervised and acted in concert at the same time" or that the five individuals were under direct or immediate control of Shelton. See United States v. Ricks, 882 F.2d 885, 891 (4th Cir. 1989).

Upon our review of the record, we conclude the Government presented ample evidence from which the jury could conclude Shelton engaged in a CCE. The Government presented the testimony of Franklin Payne, Harrison Street, Amy Lester, and Elizabeth Messer, all of whom testified to selling oxycodone for and at the direction of Shelton. Further, Ms. Lester and Ms. Messer both testified that their husbands, Harold Lester and Gary Messer respectively, similarly sold narcotics for Shelton. These witnesses explained that in exchange for selling Shelton's drugs, they received payment from him in the form of oxycodone pills. Ms. Lester detailed the frequency with which Shelton would come to her home in order to replenish their supplies or to pick up purchase money. In addition, the jury heard testimony from ATF Agent Yoh, who detailed Shelton's statement to him in which Shelton admitted that Brian Perkins and Jerry Palmer also sold narcotics for him.

The Government's evidence amply demonstrated that Shelton was not merely a member of this distribution scheme or an oxycodone addict, as the defense suggested, but was in fact a leader therein. Shelton admitted at trial to making seven trips to Mexico for the

sole purpose of purchasing oxycodone in the form of OxyContin.  In his statement to Agent Yoh, Shelton admitted to making at least twenty such trips.  This evidence supports the Government's theory, which the jury plainly adopted:  that Shelton was not a mere addict, but a leader in this wide-scale oxycodone distribution organization.

Shelton's last challenge is to the district court's use of the probation officer's calculation of the drug quantity attributable to him.  Shelton maintains that the probation officer's reliance on his statements to Agent Yoh to calculate the drug quantity attributable to him was improper because Shelton gave those statements while under duress; thus, Shelton contends, the court clearly erred in adopting that calculation and basing his sentence thereon.

When reviewing the district court's application of the Sentencing Guidelines, this court reviews findings of fact for clear error.  United States v. Green, 436 F.3d 449, 456 (4th Cir.), cert. denied, 126 S. Ct. 2309 (2006).  Review of the record reveals no such clear error.  Shelton's claim that his statements to Agent Yoh were made under duress amounts to nothing more than a self-serving assertion that is unsubstantiated by the record.  At trial, Agent Yoh, an ATF agent for five years who also served with the DEA, testified that Shelton appeared normal and was not exhibiting any signs of duress or stress during the course of the interviews.

Agent Yoh reiterated this testimony at sentencing, where he testified that Shelton did not appear to be intoxicated, or "without his faculties." There is simply no basis on which to conclude the district court committed clear error in relying on the pre-sentence report, which was based on Shelton's uncoerced and voluntary statements to Agent Yoh.

For the foregoing reasons, we affirm Shelton's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED