**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-5050

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARSHALL MONROE,

Defendant - Appellant.

No. 08-5051

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES EDWARD TYER, a/k/a James Edward Tyler, a/k/a Tyer
Edward James, a/k/a Jay, a/k/a Tyler Edward James,

Defendant - Appellant.

No. 08-5052

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER ROGERS,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:08-cr-00043-CMH-1; 1:08-cr-00043-CMH-2; 1:08-cr-00043-CMH-3)

Submitted: August 19, 2010          Decided: September 20, 2010

Before MOTZ, SHEDD, and AGEE, Circuit Judges.

Affirmed in part, vacated and remanded in part by unpublished per curiam opinion.

Paul P. Vangellow, PAUL P. VANGELLOW, PC, Falls Church, Virginia, Bruce A. Johnson, Jr., Bowie, Maryland, Douglas A. Steinberg, Alexandria, Virginia, for Appellants. Dana J. Boente, Acting United States Attorney, Michael E. Rich, Assistant United States Attorney, Tino M. Lisella, Allison Ickovic, Special Assistant United States Attorneys, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Marshall Antonio Monroe, James Edward Tyer, and Christopher Rondell Rogers were charged with numerous offenses related to a series of robberies that occurred on October 28 and 30, 2007. A jury convicted them of Hobbs Act conspiracy, 18 U.S.C. § 1951 (2006) (Count One), and three Hobbs Act robberies, 18 U.S.C. § 1951 (Counts Two, Three, Four), in connection with the October 28 robberies. Monroe and Tyer also were convicted of Hobbs Act robbery in connection with the October 30 robbery (Count Five), three counts of brandishing a firearm during a crime of violence, 18 U.S.C.A. § 924(c)(1)(A)(ii) (West Supp. 2010) (Counts Six, Seven, Eight), in connection with the October 28 robberies, and possession of an unregistered firearm, 26 U.S.C. §§ 5845(a), 5861(d), 5871 (2006) (Count Thirteen). Monroe was convicted of an additional § 924(c)(1)(A)(ii) violation (Count Nine) in connection with the October 30 robbery. Tyer was convicted on two counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (2006) (Counts Eleven, Twelve). Finally, Rogers was convicted of one § 922(g)(1) violation (Count Ten).

On motion of the United States, the district court dismissed Counts Six-Ten. Rogers was sentenced to 240 months in prison. Tyer and Monroe each received an aggregate sentence of

3

300 months. In these consolidated appeals, the Appellants challenge their convictions and sentences.

I

Tyer contends that the district court erred when it denied his motion to suppress evidence seized during the search of a vehicle in which he was a passenger on October 30, 2007. We review the factual findings underlying a motion to suppress for clear error, and the legal determinations de novo. United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007). When evaluating the denial of a suppression motion, we consider the evidence in the light most favorable to the Government, the prevailing party below. United States v. Uzenski, 434 F.3d 690, 704 (4th Cir. 2006).

Brief investigatory stops of persons or vehicles that fall short of traditional arrest are protected by the Fourth Amendment. United States v. Arvizu, 534 U.S. 266, 273 (2002). A stop satisfies the Fourth Amendment if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). To determine whether the necessary reasonable suspicion existed, a court "must look at the 'totality of the circumstances' . . . to see whether the

4

detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." Id. at 273. "Reasonable suspicion" that criminal activity is afoot "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id.

Here, the totality of the circumstances justified the traffic stop. The officer who initiated the traffic stop observed the car immediately after officers investigating the robbery of a Sunoco station broadcast a description of the suspects and their vehicle. Although the car was described in the broadcast as a Taurus, the officer knew that a Taurus and a Sable are nearly identical. Further, the Sable was traveling from the direction where the robbery had just occurred. Finally, the stop occurred within minutes of the robbery. These circumstances were sufficient to give rise to the requisite reasonable suspicion justifying the stop of the vehicle.

While Tyer had the right to challenge the traffic stop, see Brendlin v. California, 551 U.S. 249, 259 (2007), he had no right under the Fourth Amendment to challenge the ensuing search of the vehicle because he lacked a legitimate expectation of privacy with respect to the vehicle that belonged to its driver, Nadia Childs. See Rakas v. Illinois, 439 U.S. 128, 148-

5

49 (1978); United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992). We conclude that the search did not violate Tyer's Fourth Amendment rights and that the denial of the suppression motion was not an abuse of discretion.

II

The Appellants contend that there was insufficient evidence to establish their identities as participants in the October 28 robberies and Monroe's and Tyer's identities as the October 30 robbers. They argue that the evidence against them consisted primarily of the testimony of Childs, which they claim was unreliable. Further, they attack the credibility of prosecution witnesses Steven Scott and Delonte Green. They also maintain that the only forensic evidence linking any of them to the robberies, Monroe's thumb prints found at one crime scene, should not have been admitted.

When a defendant challenges the sufficiency of the evidence, we consider whether the evidence, when viewed in the light most favorable to the Government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Cameron, 573 F.3d 179, 183 (4th Cir. 2009). We will sustain a verdict supported by

substantial evidence.  Glasser, 315 U.S. at 80.  We do not review the credibility of witnesses, and we assume the jury resolved all contradictions in the testimony in favor of the Government.  United States v. Sun, 278 F.3d 302, 312 (4th Cir. 2002).

The evidence was more than sufficient to prove beyond a reasonable doubt that Monroe, Tyer, and Rogers[1] robbed the three 7-Eleven stores on October 28, and that Monroe and Tyer robbed the Sunoco on October 30.  Childs' testimony alone is enough to establish identity.  She testified that, on the night of October 27, she drove Rogers to his home.  He went inside and returned with a black bag that contained a gun.  They then drove to Oxon Hill, Maryland, to pick up Tyer.  As they drove, Rogers mentioned "making a move"; Childs understood this turn of phrase to mean that Rogers was planning a robbery.  Monroe was with Tyer when Childs and Rogers located Tyer.  With Rogers driving and Childs in the passenger seat, the four left for Virginia.

---

[1] Although Rogers did not enter any of the 7-Elevens, he is nonetheless guilty of Hobbs Act robbery.  Whoever aids or abets the commission of an offense against the United States is punishable as a principal to the offense.  18 U.S.C. § 2 (2006). Rogers not only supplied one of the guns used in the robberies, but he also drove Childs' car during the robbery spree on October 28 and received some of the robbery proceeds.

Childs testified that she was with Rogers, Tyer, and Monroe when the three robberies were committed early in the morning of October 28. Rogers served as the driver, and Monroe and Tyer, who were both armed, entered and robbed the three stores. Childs identified the jackets that Monroe and Tyer wore during the robberies. Childs stated that she exited the car at one 7-Eleven and identified a surveillance photograph of herself at that store.

Childs testified that she was looking for Rogers late at night on October 29, when she ran into Tyer. He joined her, as did Monroe, Steven Scott, and Delonte Green. Tyer asked Childs, who was driving, if she wanted to "make a move." When they approached the Sunoco early on October 30, Tyer told Childs to turn in and park behind the building. Tyer and Monroe entered the store. They were wearing the same jackets they had worn on October 28. When they returned to the car, Childs drove away. The car soon was stopped by the police.

The convictions could be sustained on Childs' testimony alone. Her testimony is supported by other evidence, including a similar modus operandi in each robbery. Additionally, the robbers who entered the stores wore the same jackets during the four robberies, and Monroe and Tyer were found in possession of those jackets when they were arrested.

8

Additionally, Scott and Green testified that Monroe and Tyer committed the Sunoco robbery. Finally, Monroe's thumb prints were found on the cash register drawer grabbed by a robber during the second robbery. Contrary to Appellants' argument, fingerprint evidence is admissible at trial. United States v. Crisp, 324 F.3d 261 (4th Cir. 2003). Even if this evidence were not properly admitted, however, the error would be harmless, given the remaining evidence, which overwhelmingly established identity.

III

Tyer contends that the district court improperly prevented his attorney from thoroughly cross-examining witnesses Scott and Green. Their testimony, Tyer argues, was crucial to the Government's case. Through cross-examination, Tyer claims that he would have established that both Scott and Green were biased and motivated to offer testimony favorable to the Government.

"[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986) (internal quotation marks omitted). However, the district court has "wide latitude insofar as the

9

Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679. We review the district court's limitations on cross-examination for abuse of discretion. United States v. Ayala, 601 F.3d 256, 273 (4th Cir. 2010). "The critical question . . . is whether the defendant is allowed an opportunity to examine a witness['] subjective understanding of his bargain with the government, for it is this understanding which is of probative value on the issue of bias." United States v. Ambers, 86 F.3d 173, 176 (4th Cir. 1996).

During cross-examination of Scott, Tyer's attorney asked several questions that attacked Scott's credibility and suggested bias. After Scott had denied having an "understanding with the federal government as to what benefits" he might receive for his testimony, counsel inquired whether the Government had promised him anything in exchange for his testimony. The court sustained the Government's objection to this question. Tyer maintains that the court's ruling precluded his attorney from thoroughly cross-examining Scott as to possible bias and motive to fabricate. We find his argument unpersuasive and conclude that the district court did not abuse

10

its discretion in sustaining the objection because the question about promises from the Government was repetitive of the preceding question.

Nor did the district court err in barring any questions about Green's juvenile convictions and permitting only questions about his adult offenses. First, the district court's ruling was in accordance with Rule 609(d) of the Federal Rules of Evidence. To the extent that Tyer contends that limiting his cross-examination of Green violated his rights under the Confrontation Clause, his claim has no merit. See United States v. Ayala, 601 F.2d at 273.

IV

Tyer argues that the district court erred when it failed to grant his motions for a new trial or a mistrial after the prosecutor allegedly argued facts not in evidence during closing argument. We review a claim of prosecutorial misconduct to determine "'whether the [misconduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Caro, 597 F.3d 608, 624 (4th Cir. 2010) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). To prevail under this standard, the defendant must show that "the prosecutor's remarks or conduct were improper

11

and, second . . . that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002).

We conclude that any misstatement by the prosecutor did not constitute a denial of due process. The evidence of guilt was overwhelming. Further, the remarks at issue were isolated and not intentionally placed before the jury in bad faith with an intent "to divert the jury's attention to extraneous matters." United States v. Wilson, 135 F.3d 291, 299 (4th Cir. 1998).

V

Rogers' advisory Guidelines range for the robbery counts was 97-121 months,[2] Monroe's was 63-78 months, and Tyer's was 78-97 months. Rogers was sentenced to 240 months in prison.

---

[2] The district court did not explicitly rule on those objections. However, based on the court's finding that Rogers' advisory Guidelines range was 97-121 months, it appears that the court implicitly agreed that Rogers should have been in criminal history category II. It also appears that the court overruled Rogers' objections to the enhancements to his offense level. On remand, the district court should explain its calculation of Rogers' Guidelines range.

12

Tyer and Monroe each received 240 months for the robbery counts and a consecutive sixty-month sentence for the firearm offenses.

The Appellants argue that their sentences are unreasonable under Gall v. United States, 552 U.S. 38, 51 (2007), because they did not receive the required individualized assessments that Gall demands, the district court did not properly analyze the 18 U.S.C. § 3553(a) (2006) sentencing factors, and meaningful appellate review is therefore impossible. We agree and therefore vacate the sentences and remand for resentencing.

We review a sentence for reasonableness, applying an abuse-of-discretion standard. Gall, 552 U.S. at 51. In conducting our review, we first examine the sentence for "significant procedural error," including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. With respect to the explanation of the sentence, we have stated, "Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an individualized assessment based on the particular

facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009) (internal quotation marks omitted).

A claim of procedural sentencing error is preserved "`by informing the court—when the court ruling is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.'" United States v. Lynn, 592 F.3d 572, 577-78 (4th Cir. 2010) (quoting Fed. R. Crim. P. 51(b)). The standard of review employed when assessing the procedural adequacy of a sentence depends upon whether the error asserted was properly preserved in the district court. "[I]f a party repeats on appeal a claim of procedural sentencing error . . . which it has made before the district court, we review for abuse of discretion. If we find such abuse, we reverse unless we conclude that the error was harmless." Id. The Government bears the burden of establishing that an error was harmless, i.e., that the error did not affect the defendant's substantial rights. United States v. Rodriguez, 433 F.3d 411, 415-16 (4th Cir. 2006). An error affects a defendant's substantial rights if the sentence imposed "was longer than that to which he would otherwise be subject," United States v. Angle, 254 F.3d 514, 518 (4th Cir. 2001); cf. Lynn, 592 F.3d at 580.

14

If we conclude that the sentence is procedurally reasonable, we then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall, 552 U.S. at 51. At this stage, we "take into account the totality of the circumstances." Id.

Prior to sentencing, Monroe submitted a "Position on Sentencing." With respect to the § 3553(a) factors, Monroe observed that the robbers used unloaded weapons and no victim sustained a serious injury. Rogers submitted a sentencing memorandum objecting to enhancements under U.S. Sentencing Guidelines Manual §§ 2B3.1(b)(2)(B), § 2B3.1(b)(A) (2007) on the ground that the enhancements were based on acquitted conduct, the jury having found him not guilty on Counts Six-Eight. With respect to the § 3553(a) factors, Rogers argued that he was young, had worked for the majority of his young life, and was a responsible family member. Rogers asked for a sentence at the bottom of his advisory Guidelines range, which he claimed should be 41-51 months.

The Defendants were sentenced at the same proceeding. Rogers objected to the above enhancements and to his placement in criminal history category III. Although Tyer had no objections to his PSR, his attorney asked that he be sentenced at the bottom of his Guidelines range, "tak[ing] into account

15

that he's a young man . . . and even a sentence at the bottom of the guidelines will [be] a significant period of incarceration." Monroe's attorney referred to the position statement and reminded the court that the weapons were unloaded and that little money was stolen. He also described Monroe's "almost catastrophic upbringing," and noted that Monroe was young and "relatively new to the criminal justice system." Counsel asked for a sentence at the low end of Monroe's Guidelines range.

The district court determined that Rogers' advisory Guidelines range was "properly assessed at 97-121 months."[3] The court then stated:

> I also find that the guidelines in this case are too low to meet the needs of punishment and deterrence for the conduct that has occurred here.
>
> I've spent some . . . time going through the guidelines and going upward in various steps, as I'm

---

[3] According to his PSR, Rogers' advisory Guidelines range was 108-135 months, representing a total offense level of 29 and a criminal history category of III. The district court did not explicitly rule on Rogers' objections to his PSR. However, based on the ruling that his advisory Guidelines range was 97-121 months, it appears that the court implicitly sustained Rogers' objection to his placement in criminal history category III, agreeing that he should be in category II, and overruled his objections to the offense level enhancements. A criminal history category of II and offense level of 29 yields an advisory Guidelines range of 97-121 months. On remand, the court should explain its calculation of Rogers' Guidelines range.

supposed to do, to find a range in those guidelines that would properly address this conduct. There were four robberies over two nights, the use of firearms, the use of a sawed-off shotgun, one victim was injured. It's just fortunate that all of them weren't injured or someone killed.

I find that the maximum sentence in this case is the least sentence that meets the needs of punishment and deterrence. For that reason, Mr. Rogers, it will be the sentence of the Court that as to Counts 1, 2, 3, and 4, you be committed to . . . a term of 240 months. . . .

The court next sentenced Tyer. The court stated:

Well, what I previously said applies to your case as well, Mr. Tyer. I believe that the maximum sentence for these robberies is the least sentence that meets the needs of punishment and deterrence in this case.

As to Counts 1, 2, 3, 4, and 5, it will be the sentence of the Court that you . . . serve a term of 240 months. . . . As to Counts 11 [through] 13, it will be the sentence of the Court that you . . . serve a term of 60 months.

The court then sentenced Monroe:

[F]or the reasons that I've already stated, Mr. Monroe, as to Counts 1, 2, 3, 4, and 5, it will be the sentence of the Court that you . . . serve a term of 240 months. . . . As to Count 13, it will be the sentence of the Court that you . . . serve a term of 60 months.

The Appellants complain that their sentences are unreasonable under Gall. Rogers also contends, as he did below, that his advisory Guidelines range was improperly calculated because his offense level was enhanced based on acquitted conduct.

17

By asking for sentences at the low end of their respective advisory Guidelines ranges, Monroe and Tyer preserved their claims of procedural Gall error. See United States v. Lynn, 592 F.3d at 577, 581. The district court effectively engaged in no individualized assessment but instead simply incorporated the rationale used in sentencing Rogers into his rationales for sentencing Tyer and Monroe. Nor did the court address the arguments in support of the contention that certain § 3553(a) factors warranted the requested sentences. This constitutes error. See United States v. Carter, 564 F.3d at 328. Further, the error affected Monroe's and Tyer's substantial rights because their variant, 240-month sentences on the robbery counts were significantly higher than their respective advisory Guidelines ranges of 63-78 months and 78-97 months.

Rogers initially contends that the district court improperly overruled his objections to the enhancements based on acquitted conduct. The claim is without merit. We recently observed that such an "argument is nullified by clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence." United States v. Grubbs, 585

18

F.3d 793, 799 (4th Cir. 2009), cert. denied, ____ S. Ct. ___ (2010) (No. 09-9104). This rule applies even after United States v. Booker, 543 U.S. 220 (2005). Id. Here, a preponderance of the evidence established that Rogers supplied one of the guns used during the commission of the three October 28 robberies. Therefore, the sentencing enhancements at issue were proper.

Rogers' request for a sentence at the low end of his advisory Guidelines range preserved his claim of procedural Gall error. See United States v. Lynn, 592 F.3d at 581. While the district court gave a more extensive explanation for imposing a variant sentence on Rogers than it did for Monroe and Tyer, we conclude that the court nonetheless committed procedural error by failing to make the required individualized assessment. The rationale offered for Rogers' sentence describes the crime spree as a whole, rather than Rogers' particular role within the spree. In fact, the district court's words better describe Monroe's and Tyer's actions than those of Rogers, who remained in the getaway car during the three October 28 robberies and was not with Childs and the others on October 30. For instance, in sentencing Rogers, the court mentioned four robberies, even though Rogers was only involved in the three October 28 robberies. Further, the court spoke of injuries to the victims,

19

but Rogers, who did not exit Childs' car, was not the person who struck the clerks. Another factor influencing our conclusion that there was an insufficient individualized assessment is the failure of the court to address Rogers' argument that, in light of certain § 3553(a) factors, he should be sentenced at the low end of his Guidelines range. See <u>Rita v. United States</u>, 551 U.S. 338, 356 (2007).

Having found that the district court committed error, our next task is to determine whether the error was harmless. Considering that Rogers received a variant sentence that exceeded the top of his Guidelines range by 119 months, we conclude that the error was not harmless: it affected Rogers' substantial rights because he was sentenced well above his advisory Guidelines range.

VI

We therefore affirm the convictions but vacate the sentences and remand for resentencing.[4] We dispense with oral argument because the facts and legal contentions are adequately

---

[4] We recognize that the Appellants were sentenced prior to our decisions in <u>Lynn</u> and <u>Carter</u> and that the court therefore did not have the benefit of those decisions to guide it at sentencing.

presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART;</u>
<u>VACATED AND REMANDED IN PART</u>

21